Merrimack
No. 82-327

ERWIN HANKE, SR.

v.

ERWIN HANKE, JR., *& a.*

March 24, 1983

*Cleveland, Waters & Bass,* of Concord (*Robert J. Lloyd* and *Edward N. Damon* on the brief, and *Mr. Lloyd* orally), for the plaintiff.

*Orr & Reno,* of Concord (*Thomas D. Rath* on the brief, and *Sherilyn B. Young* orally), for the defendants.

*Ransmeier & Spellman,* of Concord, as guardian ad litem for unknown and unborn beneficiaries, joined in the brief of the defendants.

KING, C.J. This is an interlocutory transfer without ruling from the Superior Court (*Cann,* J.) concerning the rights of a surviving spouse under RSA 560:10, which provides for distribution of a specified portion of the deceased spouse's estate to a surviving spouse who waives testate distribution.

In 1972, Maria Hanke established a revocable *inter vivos* trust for the stated purpose of protecting the interest of herself and her spouse, the plaintiff, Erwin Hanke, Sr., to insure their comfort and security during their lives, and to avoid the delay and costs involved in the transfers of property. Maria Hanke named herself the sole beneficiary and sole trustee of the trust during her life. The trust agreement provided that on Maria Hanke's death, the plaintiff would receive the income from the trust during his life. On the plaintiff's death the property was to be distributed to the couple's children, and potentially to other family members.

Maria Hanke reserved to herself many powers under the trust agreement. Specifically, she retained the right to change beneficiaries, to amend the trust provisions, to revoke the trust in whole or in part, and to withdraw all or part of the trust estate. She also retained the power to direct the trustee to invest in specific property. In 1978, she exercised her right to amend the trust agreement by amending the agreement to provide that New Hampshire law would govern the administration of the trust.

Maria Hanke died testate in 1980. Upon her death, the plaintiff became the sole income beneficiary of the trust. The defendants, the plaintiff's children, became successor co-trustees. The plaintiff also has the right to receive amounts of the trust principal if the co-trustees find that the income from the trust is insufficient. Because Maria Hanke had transferred virtually all of her property to the

trust during her lifetime, the trust estate comprised more than ninety-eight percent of her total assets at her death.

The plaintiff waived all provisions of his wife's will in his favor and, under RSA 560:10, is entitled to receive one-third of his wife's estate. He then filed the instant action, against the trustees and remainder beneficiaries of the trust, to set aside his wife's transfers of property to the trust, contending that they were "illusory" and thus invalid. If the transfers are set aside, the property will become part of his wife's estate, and according to the plaintiff, the trust will be entitled to a substantial refund of federal estate tax.

The plaintiff filed a motion for summary judgment accompanied by an affidavit. The defendant successor trustees objected to the plaintiff's motion and filed a cross motion for summary judgment. The superior court did not rule on the motions, and instead transferred the following questions of law for determination by this court:

"1. Under New Hampshire law are the rights of a surviving spouse under RSA 560:10 defeated by the deceased spouse's *inter vivos* transfers to a trust when the deceased spouse/grantor retained and exercised virtually absolute control over the transferred property during her lifetime and after the transfers by reason of her status (1) as grantor, because of the terms of the trust instrument allowing her to revoke or amend it, (2) as sole trustee, because, in part, of her power under the instrument to deal with the property as absolute owner thereof, and (3) as sole beneficiary of the trust?

2. If the answer to the first question is 'no', whether under the circumstances disclosed by the Bill in Equity, defendant's Answer, the cross Motions for Summary Judgment, plaintiff's Affidavit, and the Objections filed in connection therewith, the transfers by the decedent of property to her *inter vivos* trust is (or can be found to be) illusory and of no effect such that the property transferred is subject to the surviving spouse's rights under RSA 560:10?"

■■ It is well established that under New Hampshire law we look to the intent of the spouse in making a transfer to determine the validity of a transfer which has the effect of depriving a surviving spouse of his or her statutory rights in the estate of the deceased spouse. If the spouse makes the transfer for the purpose of depriving the surviving spouse of his or her rights, the transfer is invalid. *Hamm v. Piper*, 105 N.H. 418, 420, 201 A.2d 125, 127 (1964); *Ibey v. Ibey*, 93 N.H. 434, 435, 43 A.2d 157, 158 (1945). To determine the

intent of the transferor, a court will consider the circumstances surrounding the transfer, "including the pecuniary circumstances of the parties when the conveyance is made, the consideration received . . . , the relationship of the parties to the transaction, and other relevant facts." *Hamm v. Piper*, 105 N.H. at 420–21, 201 A.2d at 127.

The plaintiff asks that we expressly adopt the "illusory transfer doctrine" enunciated in *Newman v. Dore*, 275 N.Y. 371, 9 N.E.2d 966 (1937), either to replace or supplement our test. In *Newman*, the Court of Appeals of New York rejected a test based on the motive or intent of the deceased spouse in making a transfer, to determine the validity of a transfer by a deceased spouse which had the effect of depriving the surviving spouse of his or her right to receive a statutory share of the deceased spouse's estate. Instead, the court stated that the only sound means of determining the validity of a challenged transfer is whether the transfer is "real or illusory." *Id.* at 379, 9 N.E.2d at 968–69.

Under this approach, a transfer is valid if the spouse in good faith divested himself of ownership of his property. *Id.* at 379, 9 N.E.2d at 969. Using this test, the *Newman* court invalidated several transfers in trust by the deceased spouse. The court held that the transfers were "illusory" because the deceased spouse had retained the right to receive trust income for life, the power to revoke the trust, and the right to control the trustees. *Id.* at 381, 9 N.E.2d at 969.

As the plaintiff correctly states, tests which focus strictly on the intent of the transferor have been criticized by many courts and commentators because these tests create doubt about all transfers made by a spouse. *See, e.g, Newman v. Dore*, 275 N.Y. at 379, 9 N.E.2d at 968–69; *see generally,* W. MACDONALD, FRAUD ON THE WIDOW'S SHARE 117 (1960); Note, *Estate Planning: Validity of Inter Vivos Transfers Which Reduce or Defeat the Surviving Spouse's Statutory Share in Decedent's Estate*, 32 OKLA. L. REV. 837, 839–40 (1979). However, commentators have stated that intent tests which consider the objective manifestation of the transferor's intent, as our test does, have considerable merit. *See* W. MACDONALD, *supra* at 117–18.

■ In determining the validity of a transfer which has the effect of depriving a surviving spouse of his or her statutory right to a certain portion of the deceased spouse's estate, our test attempts to reconcile the policy of permitting a spouse to freely dispose of his or her property with the policy of protecting a surviving spouse by guaranteeing him or her a portion of the deceased spouse's estate. We believe that our test, which focuses on objective manifestation of the transferor's intent, properly balances these two policies. If the

legislature considers the test specified in *Hamm* to be an improper balancing of these policies, it can adopt the *Newman* test or any other provision which it believes correctly balances these policies. *See generally*, W. MACDONALD, *supra* at 271–327.

It is also important to note that the *Newman* test is not without problems. It has been criticized by commentators as being illogical because most courts have held that the retention of the power to revoke a trust, when the spouse has made a transfer in trust, is not generally excessive control so as to make the transfer illusory. W. MACDONALD, *supra* at 90. In addition, commentators have noted that courts have difficulty in applying the test consistently. *Id.* at 93–95.

██ For these reasons, we refuse to adopt the "illusory transfer doctrine" enunciated in *Newman v. Dore*. To answer the first question posed by the superior court, the rights of a surviving spouse under RSA 560:10 are defeated by an *inter vivos* transfer of property in trust by a deceased spouse, even if the deceased spouse retained and exercised virtually absolute control over the transferred property during her lifetime, unless the transfer was made with the purpose of depriving the surviving spouse of his rights. Because of our answer to this question, it is not necessary for us to consider the second question transferred by the superior court.

*Remanded.*

All concurred.