[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
This civil action is a complaint for declaratory relief. The plaintiff Olga Pezza wants this Court to declare that she is entitled to a life estate, pursuant to G.L. 1956 (1984Reenactment) § 33-25-2, as amended, in certain real property held by the defendant Michael Pezza as trustee under a trust created by the plaintiff's deceased husband, Anthony Pezza, Jr. The declaration of trust and a contemporaneously executed will are in evidence, as well as deeds conveying real estate from Anthony Pezza, Jr. to himself as trustee under the trust. In addition, the evidence includes an amendment to the trust, by which it was made irrevocable, a resignation by Anthony Pezza, Jr. as trustee, an acceptance as trustee by Michael Pezza, and a statutory disclaimer of all benefits under the trust by Anthony Pezza, Jr.
I.
After consideration of all relevant exhibits and from the testimony which the Court finds competent and credible, the Court finds the following facts:
The principal purpose of the inter vivos declaration of trust and the will executed by Anthony Pezza Jr. on December 29, 1983 was both to provide for his children upon his death or in the event of his disability and to exclude his wife Olga from any claim after his death against the real estate which he simultaneously transferred to himself as trustee. When he transferred bare legal title to the real estate to himself as trustee while the trust was revocable and while he had a power to compel re-conveyance of the realty back to himself out of trust and while he enjoyed an unrestricted right to all the principal and income of the trust, he thereby retained complete and unconditional control of the full ownership of that land during his lifetime.
On June 25, 1986 he resigned as trustee and Michael Pezza succeeded him as trustee under the terms of the trust declaration. Any invalidity of the trust because of a merger of the legal title of the trustee with the equitable interest of the settlor as beneficiary was thereby eliminated. The settler also amended the trust so that he could no longer modify, amend or revoke the trust. The trust thereupon became irrevocable. It could no longer be considered to be testamentary in any respect.
Under provisions of § 34-5-2 of the General Laws on December 5, 1986 the beneficiary Pezza disclaimed any power to compel re-conveyance to him of the real estate subject to the trust. According to § 34-5-8 that disclaimer became irrevocable and the disclaimed interest could never vest in Anthony Pezza, Jr. He had thereby fully and effectively irrevocably divested himself of any interest in or right to the real estate held by Michael Pezza as trustee. His interests passed by law under the trust as if he had died either on June 25, 1986 just before he made the trust irrevocable, or on December 5, 1986 just before he disclaimed any power to compel a re-conveyance of the real estate. The combination of the amendment of the trust on June 25, 1986 and the statutory disclaimer on December 9, 1986, within nine months, was to make a complete and absolute transfer of all interest in the real estate to the remaining beneficiaries under the trust. There is no evidence of any consideration for the amendment to the trust or the disclaimer so the surrender of rights and the transfer thereby accomplished was in effect a gift.
The Court further finds that, considering all the circumstances shown by the evidence, the conduct of Anthony Pezza, Jr. in executing the amendment and the later disclaimer was voluntary and an act of his free will. He thereby intended to, and in fact did make a complete and absolute gift of the assets held in trust to the beneficiaries named or described in the trust, preclusive of any interest of his own or his wife, as he later learned to his chagrin, regret and rage. Cf., W. Shakespeare, The Tragedy of King Lear. Anthony Pezza, Jr. did nothing afterwards during his lifetime to avoid or set aside the consequences of his actions in 1986. He thereby confirmed the finality of those actions.
II.
The question presented by this case is whether or not a spouse can avoid the life estate provided in § 33-25-2 by a transfer of title to real estate to a trustee where the spouse continues to enjoy some of the benefits of ownership of the real property but surrenders all powers of control over the trust or the real property held under the trust. The plain language of §33-25-2 is of no help because it contains no express reference to trusts, testamentary or inter vivos, nor to gifts in any form. It provides:
 "Whenever any person shall die leaving a husband or wife surviving, the real estate owned by such decedent in fee simple at his or her death shall descend and pass to the husband or wife for his or her natural life subject, however, to any encumbrances existing at such death, Provided that the liability, if any, of such decedent to discharge such encumbrance or encumbrances shall not be impaired. The provisions of §§ 33-1-1 and 33-1-2 shall be subject to the provisions of this chapter and of § 33-1-6."
It is undisputed that Anthony Pezza, Jr. died leaving a wife surviving. The question is whether or not at his death he "owned" the real estate transferred to the trust in fee simple. If the trust and disclaimer are valid, he did not. If the trust and disclaimer are invalid, he did, and his wife is entitled to enjoy a life estate by virtue of the statute.
The plaintiff contends that the trust and the disclaimer are invalid because they are an intentional effort by the decedent to deprive and defraud her of the spousal life estate created by the statute. Two fundamental public policies are in conflict. One is the public interest in preserving the alienability of real property. An owner of real property should enjoy freedom to alienate his interests in that land. An innocent purchaser should be entitled to rely on a title of record. That policy is served by the abolition of dower and curtesy in § 33-25-1. Another is the provision of some continuation of spousal survivorship interests in real property, which were once protected by dower and curtesy. This policy is served by the life estates created by§ 33-25-2.
This section entirely misses the growth of the inter vivos,
or living, trust as a supplement to or substitute for a testamentary document in modern estate planning. It also has scant regard for the relative frequency of second and subsequent marriages and composite families. It assumes that ownership of land will generally pass on death either by intestate succession or under a will. Note the references in § 33-25-2 to §§33-1-1, 33-1-2 and 33-1-6 all concerning intestate descent of real estate, and the reference to the provisions of the decedent's will in § 33-25-3.
The Courts have taken two major approaches in dealing with the problem presented in this case. The first approach focuses on the intent of the spouse who created the trust. In some jurisdictions, if a spouse transfers assets to a trust but retains lifetime control over the assets, and if the purpose of the transfer was to deprive the surviving spouse of his or her statutory rights, the transfer is invalid. In determining the transferor's intent the court is to consider the circumstances surrounding the transfer, including the financial situation of the parties at the time of the transfer, the consideration, if any, for the transfer, the relationship of the parties to the transaction, as well as any other factors which may be relevant.See for example, Hanke v. Hanke, 459 A.2d 246, 248 (N.H. 1983). This approach recognizes that, while inter vivos
trusts which operate to preclude a spousal survivorship interest sometimes are part of an estate plan in which a surviving spouse has adequately been provided for by other gifts or transfers, spouses will not be unilaterally permitted entirely to avoid the statutory provision by a transfer in trust. Such a transfer is regarded as if it were a transfer to avoid a creditor's claim and is sometimes said to be in fraud of the surviving spouse's claim.
Our Supreme Court applied a variation of this approach in another situation in Green v. Green, 559 A.2d 1047 (R.I. 1989). In that case the decedent had opened a number of bank accounts, each in his name as trustee for one of his heirs, and his surviving spouse was asking that the proceeds of each of these accounts be included in his estate. The trial court found that each of these accounts was a valid totten trust, which has been recognized as a lawful means of transferring assets on the death of the settlor. The transferor's intent is critical to the creation of a valid totten trust. Merely making a deposit in trust for another is not conclusive evidence of such intent, but does establish a prima facie case supporting such intent. In that case the Supreme Court without analysis or discussion simply agreed with the trial court that the decedent's "control, disposition, and appropriation of the funds in the accounts [did] not invalidate the trusts or render them testamentary." Id., at 1051. The important intent in that case was the intent to create totten trusts. The intent cases like Hanke, supra, focus on the intent to deprive a spouse of a statutory survivorship right without more.
The second major approach is that found in the landmark decision of the New York Court of Appeals in Newman v. Dore,275 N.Y. 371, 9 N.E.2d 966, 112 A.L.R. 642 (1937). In that case the Court noted that in a few States (as in New Hampshire) ". . . it is the intent to defeat the wife's contingent rights which creates the invalidity and it seems that an absolute transfer of all his property by a married man during his life, if made with other purpose and intent than to cut off an unloved wife, is valid even though its effect is to deprive the wife of any share in the property of her husband at his death." 112 A.L.R., at 647. The Court rejected intent as a satisfactory test of validity. Instead, it chose to test the validity of a transfer by whether or not it was "real" or "illusory". Citing Leonard v. Leonard,181 Mass. 458, 63 N.E. 1068, 92 A.M. St. Rep. 426 (1902), the Court said: "The test has been formulated in different ways, but in most jurisdictions the test applied is essentially the test of whether the husband has in good faith divested himself of ownership of his property or has made an illusory transfer."Id., at 647-48. After considering a number of cases in which courts have upheld the validity of trusts in which the decedents had retained extensive control of trust assets during their lifetimes, the Court said: "In no jurisdiction has a transfer in trust been upheld where the conveyance is intended only to cover up the fact that the husband is retaining full control of the property though in form he has parted with it. Though a person may use means lawfully available to him to keep outside of the scope of a statute, a false appearance of legality, however attained, will not avail him. Reality, not appearance, shoulddetermine legal rights." (Emphasis supplied). Id., at 648. The Court of Appeals went on to conclude that, judged by the substance and not by the form, the conveyance in the case before it was illusory, "intended only as a mask for the effective retention by the settlor of the property which in form he had conveyed." Id. The doctrine has been referred to as the "illusory transfer doctrine" (Hanke v. Hanke, supra, at 248) or the Newman v. Dore principle. See for example,Staples v. King, 433 A.2d 407, 410-11 (Me. 1981) and cases and treatises cited therein.
The defendants argue that the trust involved in this case is so similar to a totten trust as described in Green v. Green,supra, that its validity as a valid estate planning tool ought to be recognized. As a result, they say, the transfers of real estate to the trust effectively removed that property from the decedent's estate at the time of his death. This argument is cogent, but the plaintiff argues that it fails to consider the rationale of Pezza v. Pezza, 571 A.2d 1123 (R.I. 1990). In that case the Supreme Court held that the Family Court had jurisdiction over the very trust in issue here as "a necessary adjunct of its power to adjudicate a divorce." Id., at 1125. The Court said:
 "The Family Court must have jurisdiction to set aside a trust established by a marriage partner if it appears that the trust was created with the intent to keep assets from the other marriage partner, and the Court should be able to order payments from such a trust to implement an order for support." (Emphasis supplied.) Id.
The Court did not address the question of whether the "intent" referred to is the Hanke type of intent or the Newman v. Dore
intent. Of course, the Family Court's jurisdiction over this trust died with Anthony Pezza, Jr. Centazzo v. Centazzo,556 A.2d 560, 562-64 (R.I. 1989). The question is whether a spouse's interest under § 33-25-2 (life estate in lieu of dower) deserves less protection than that under § 15-5-16 (alimony in lieu of dower). If a transfer in trust could defraud a wife of her right to support from a living husband, why should it not by the same token equally defraud her of her right to support from the estate of a dead one beyond the temporary provisions of §33-1-3? Why should a person be able to do dead, what he or she could not lawfully do living?
A careful scrutiny of the two statutory provisions shows some critical distinctions. First, § 15-5-6.1 refers to a spouse's estate generally, and includes all kinds of property. Section33-25-2 refers only to real estate. This section has a purpose independent of spousal support. It is concerned with freeing real property from the encumbrances on alienability imposed by dower and curtesy. Second, § 15-5-6.1 expressly permits consideration by the court of transfers of assets made in contemplation of divorce without fair consideration. Section 33-25-2 does not address the problem of "fraudulent" transfers at all. Third, §15-5-16.1 requires the intervention of the Family Court for establishment of the benefit as well as its enforcement. Section33-25-2 is self-executing where there is no question of its application. It seems that the General Assembly has taken "til death do us part" seriously in distinguishing spousal rights in decedent's estates from their rights in the estates of living spouses. Even so, one cannot believe that the General Assembly intended that one spouse could deprive the other of an interest under § 33-25-2 through a fraudulent transaction.
III.
This Court concludes that the Newman v. Dore test ought to apply in this case. By his actions in 1986 the decedent, Anthony Pezza, Jr. lost any power to control his real estate. Whatever his intent may have been in creating the trust in 1983, the actions he took in 1986 eliminated any question that the trust was a sham or illusory. The trust was real. The plaintiff's survival interests, like the settlor's living one's were terminated. While Anthony Pezza, Jr. was alive and competent, the trust as executed in 1983 was the functional equivalent of a will until the amendment and disclaimer in 1986. Thereafter, it became the functional equivalent of a completed inter vivos gift. It was valid. He did not "own" the real property when he died.
Accordingly, judgment will enter for the defendants. The defendants will present a form of judgment denying and dismissing the plaintiff's complaint on notice to the plaintiff.