ROBERT E. NILE, individually and as administrator[1] *vs.* DOROTHY M. NILE & another,[2] trustees.[3]

Middlesex. May 1, 2000. - August 29, 2000.

Present (Sitting at Worcester): MARSHALL, C.J., GREANEY, IRELAND, SPINA, & COWIN, JJ.

*Jurisdiction,* Personal, Long-arm statute. *Trust,* Jurisdiction, Constructive trust. *Statute,* Construction. *Practice, Civil,* Motion to dismiss, Failure to join party. *Contract,* Settlement agreement, Performance and breach, Implied covenant of good faith and fair dealing. *Conflict of Laws. Words,* "Personal representative," "Estate."

This court concluded that the term "personal representative" appearing in G. L. c. 223A, § 1, refers to administrators and executors and persons who perform substantially the same functions as those fiduciaries, and does not include trustees. [394-395]

Equitable principles required that trustees who performed functions similar to those of personal representatives be treated accordingly, and thus, in such circumstances, such trustees were "personal representatives" for purposes of G. L. c. 223A, § 1. [395-396]

A divorced decedent had substantial and sufficient contacts with Massachusetts to warrant the Superior Court's exercise of personal jurisdiction over his personal representatives pursuant to G. L. c. 223A, § 3, in an action seeking to enforce the terms of a postdivorce settlement agreement. [396-397]

A breach of contract claim was properly brought in Massachusetts in order to marshal assets of an estate administered in New Hampshire, and there was no merit to the defendants' argument that New Hampshire had sole jurisdiction over that claim. [397-398]

A Superior Court judge correctly denied civil defendants' motions to dismiss claims against them, where the plaintiff and the defendants were the proper parties, and where the evidence demonstrated that the defendants' decedent had violated the covenant of good faith and fair dealing by breaching an agreement to bequeath and devise his estate. [398-399]

In an action to enforce a postdivorce settlement agreement to bequeath and devise a portion of an "estate," the judge correctly determined that the term "estate" meant the estate that the decedent enjoyed and over which he exercised control during his lifetime, and not the probate estate, which contained no assets. [399-400]

In an action for breach of a divorce settlement agreement seeking the equitable removal of assets wrongfully transferred to a New Hampshire trust, a

[1]With the will annexed of the estate of Arthur W. Nile.

[2]First NH Investment Services Corporation.

[3]Of The Dawn Trust.

Superior Court judge correctly concluded that Massachusetts had the more substantial interest in the matter, and appropriately imposed a constructive trust on the assets. [400-402]

Summary judgment was appropriate in a civil action in which there were no disputed issues of material fact. [402-403]

CIVIL ACTION commenced in the Superior Court Department on May 17, 1996.

The case was heard by *Diane M. Kottmyer*, J., on a motion for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Michael C. Harvell*, of New Hampshire (*David S. Rosenthal* with him) for First NH Investment Services Corporation.

*Robert J. McClear*, of Michigan, for Dorothy M. Nile.

*Ronald F. Kehoe* (*Robert G. Aruzese* with him) for the plaintiff.

SPINA, J. Robert Nile (Robert), individually and as administrator with the will annexed (w.w.a.) of the estate of his late father, Arthur W. Nile (Nile), brought a civil action to enforce the terms of a postdivorce settlement agreement between Nile and the guardian of Florence J. Nile (Florence), Robert's mother. Clause Five of that agreement provided that Nile would bequeath and devise at least two-thirds of his estate to his children by Florence. The defendants are the successor trustees of The Dawn Trust (trust), a revocable inter vivos trust in which Nile held and solely controlled his entire estate until his death. A Superior Court judge ordered summary judgment for Robert on counts one through four of his complaint, which sought declaratory relief and damages for breach of contract and breach of the implied covenant of good faith and fair dealing; the judge dismissed counts five and six, which alleged a fraudulent conveyance. The defendants, residents of New Hampshire, appealed, claiming that the judge erred (1) in exercising personal jurisdiction over them because our long-arm statute does not authorize jurisdiction over foreign trustees, and because Robert failed to establish they had sufficient contact with Massachusetts; (2) in exercising jurisdiction over the subject matter of this controversy, the identity of the assets of a New Hampshire estate; (3) in denying their motion to dismiss under Mass. R. Civ. P. 12 (b) (6), (7), 365 Mass. 754 (1974); (4) in ruling that Nile's estate, for purpose of the settlement agree-

ment, included the trust assets; (5) in imposing a constructive trust pursuant to Massachusetts law where the terms of the trust provide that New Hampshire law shall govern; (6) in failing to credit assets left to Robert through the trust; and (7) in granting summary judgment where a genuine question exists as to Nile's ownership of all the assets held by the trust. We transferred the appeal to this court on our own motion. We affirm.

We summarize the salient undisputed facts, reserving others for discussion of the issues. Nile married Florence in 1940. There were three sons of the marriage. The family lived in Massachusetts. Florence developed a mental illness which necessitated the appointment of Nile by the Probate and Family Court to be her guardian. She was subsequently institutionalized. In 1964, Nile obtained a divorce in Alabama. The divorce decree made no provision for support and maintenance of Florence or the couple's three minor children. Nile married his second wife, Dorothy, that same year and they lived in the former family's residence until 1965. Thereafter the couple moved to New Hampshire. Nile continued to operate a business in Cambridge, A.W. Nile, Inc., which he had formed around 1940.

Robert, still a minor after his father's remarriage, consulted an attorney regarding support and maintenance for his mother and his oldest brother, who was mildly retarded. Consequently, Nile resigned as Florence's guardian, and a successor guardian was appointed. A sealed agreement was negotiated as to the issues left unresolved by the Alabama divorce, including support and maintenance. Clause Five of the agreement provides: "Nile agrees to keep in force and effect until his death a will under which he will bequeath and devise to the children of his marriage to Florence J. Nile not less than two-thirds of his estate." The agreement further provides that it is "subject to the approval of the Probate Court for Middlesex County." Florence's new guardian, Nile, Robert, and his oldest brother joined in a petition to the Probate Court for approval of the settlement agreement, which a judge approved on March 28, 1968. Robert's brothers died in 1966 and 1968, respectively, without issue, leaving Robert as the sole surviving child of Nile and Florence.

Nile executed a will on May 12, 1976, in which he left the bulk of his stock in A.W. Nile, Inc., to Robert. He also created the trust on May 12, 1976. Nile retained full power over all property of the trust and was its sole trustee during his lifetime.

Under the terms of the trust the successor trustees were directed, on the death of Nile, to divide the trust property between a marital trust for the benefit of Dorothy, and a family trust for the benefit of Robert and his issue. The amount to be allocated to the marital trust was to be such that it would qualify for the marital deduction under the Internal Revenue Code of 1954. The balance of the trust property was to be allocated to the family trust. In September, 1976, Nile sold A.W. Nile, Inc., and retired. The proceeds of the sale were transferred to the trust.

Nile died July 12, 1994. His will, as amended by a codicil executed January 8, 1977, made no provision for Robert, and his probate estate contained no assets. His Federal gross taxable estate was $4,737,218.84, of which $4,623,191.01 was in the trust, and the balance consisted of jointly held property. The trust, as amended on January 27, 1994, and March 14, 1994, provided that the marital trust be funded with all but $600,000 of the trust property, thereby leaving $600,000 for the family trust.

Robert petitioned the Hillsborough County Probate Court in New Hampshire for appointment as administrator w.w.a. of Nile's estate after First NH Investment Services Corp., whom Nile had nominated to be executor, declined to serve. Robert made known his intentions to pursue his claim under the postdivorce settlement agreement against Nile's estate. Under N.H. Rev. Stat. Ann. § 553:2(III) (1997), a creditor may be appointed administrator of an estate. Robert was appointed administrator of his father's estate on April 3, 1996. He asserted his claim against the estate, and as administrator w.w.a. determined that the claim was valid. On April 30, 1996, Robert, in his fiduciary capacity, made demand on the successor trustees to pay two-thirds of the assets of the trust to satisfy Nile's debt to Robert under the terms of the postdivorce settlement agreement.[4] The successor trustees declined.

Robert brought the underlying civil action in Massachusetts on May 17, 1996. On August 16, 1996, a judge in the Superior Court enjoined the successor trustees from transferring or distributing trust assets pending a decision on the merits. Dorothy moved to dismiss the action for lack of personal and subject matter jurisdiction, and for omissions covered by rule

---

[4]Article IV of the trust provides that the successor trustees "shall pay such sum or sums from the trust property as my executor may request in writing for the purpose of paying . . . my debts."

12 (b) (6) and (7). Her motion was denied on August 16, 1996. On January 3, 1997, she petitioned the New Hampshire Probate Court for Robert's removal as administrator and for an order that he dismiss his action in Massachusetts. Her petition was denied on April 21, 1997. Robert prevailed on his motion for summary judgment, and the defendants filed a timely notice of appeal from the final judgment.

1. *Personal jurisdiction.* The defendants argue that the Superior Court lacked personal jurisdiction over them because (1) the Massachusetts long-arm statute, G. L. c. 223A, § 3, does not confer personal jurisdiction over foreign trustees, and (2) the evidence failed to establish sufficient contacts between the defendants and Massachusetts to warrant the exercise of personal jurisdiction.

General Laws c. 223A, § 3 (*a*), states:

> "A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's
>
> "(*a*) transacting any business in this commonwealth."

General Laws c. 223A, § 1, states:

> "As used in this chapter, 'person' includes an individual, his executor, administrator *or other personal representative*, or a corporation, partnership, association or any other legal or commercial entity, whether or not a citizen or domiciliary of this commonwealth and whether or not organized under the laws of this commonwealth" (emphasis added).

The defendants contend that they are not "personal representatives" of Nile whose conduct in Massachusetts provided the basis for the Superior Court's jurisdiction.

The term "personal representative" is not defined in G. L. c. 223A. Where the Legislature has not defined a term in a statute, we construe the term as it is commonly understood. See *Westinghouse Broadcasting Co.* v. *Commissioner of Revenue,* 382 Mass. 354, 357, appeal dismissed, 452 U.S. 933 (1981). The term, as generally understood, refers to persons appointed by courts to administer decedents' estates, namely, executors and administrators in all forms, including special administrators, public administrators, and administrators de bonis non. Our decisions consistently refer to "personal representatives" solely

in the context of decedents' estates, and Robert has cited no authority to the contrary. See, e.g., *Garfield* v. *White*, 326 Mass. 20, 22 (1950); *Brown* v. *Boston & Me. R.R.*, 283 Mass. 192, 195-196 (1933). This discrete use of the term distinguishes fiduciaries of decedents' estates from other fiduciaries, such as guardians or conservators, see *Matter of Jones*, 379 Mass. 826, 833 n.10 (1980); *Old Colony Trust Co.* v. *Coffman*, 342 Mass. 153, 154-156 (1961), and trustees. See *Garfield* v. *White, supra.* The Legislature has defined the term "personal representative" in G. L. c. 191B, § 1 (3), the Massachusetts Statutory Will Act, as "the executor, administrator, successor personal representative, special administrator, or a person who performs substantially the same functions relating to the estate of a decedent under the law governing their status." Nearly the same definition appears in G. L. c. 199A, § 1, an act governing foreign fiduciaries. We conclude, therefore, that the term "personal representative" appearing in G. L. c. 223A, § 1, refers to administrators and executors and persons who perform substantially the same functions as those fiduciaries, and does not include trustees.

Equitable principles have been applied to trustees, however, in circumstances present here, where they perform similar functions as personal representatives and are treated accordingly. During his lifetime, Nile enjoyed all the indicia of ownership of the property he placed in the trust. The trust was revocable, and he was settlor, trustee, and sole beneficiary. Because of the interest he retained, the successor trustees hold the trust property subject to the claims of creditors. See *State St. Bank & Trust Co.* v. *Reiser*, 7 Mass. App. Ct. 633 (1979). See also Restatement (Second) of Trusts § 156(2) (1959); Restatement (Second) of Property § 34.3(3) comments h, j (1990). In this respect the defendants have a status comparable to that of personal representatives, and public policy requires that they be treated accordingly. See *State St. Bank & Trust Co.* v. *Reiser, supra* at 638. The drafter of the trust seemingly recognized this principle, as Article IV of the trust requires the successor trustees to pay Nile's debts as requested by his executor. The Legislature also appears to have taken note of this principle when it defined "personal representative" in G. L. c. 199A, § 1, as "an executor, administrator . . . *and persons who perform substantially the same function under the law governing their status*" (emphasis added). We hold, therefore, that the defendants, as

Nile's successor trustees, are his "personal representatives" for purposes of G. L. c. 223A, § 1.

The defendants next argue that, even if they are personal representatives, it has not been shown that they had sufficient contact with Massachusetts to warrant the exercise of personal jurisdiction over them. Before personal jurisdiction can be exercised over a foreign defendant under G. L. c. 223A, § 3, due process requires that "there was some minimum contact with the Commonwealth which resulted from an affirmative, intentional act of the defendant, such that it is fair and reasonable to require the defendant to come into the State to defend the action." *Good Hope Indus., Inc.* v. *Ryder Scott Co.*, 378 Mass. 1, 7 (1979). The statute is "general and applies to any purposeful acts by an individual, whether personal, private, or commercial." *Ross* v. *Ross*, 371 Mass. 439, 441 (1976).

Nile negotiated and executed the settlement agreement in Massachusetts, and agreed that it would be subject to the approval of the Middlesex County Probate Court. He jointly petitioned that court for approval of the settlement agreement. The purpose of the agreement was to resolve his obligations to his former wife and children, all of whom resided in Massachusetts. Massachusetts had a direct and substantial interest in Nile's provision for his family. His primary asset, A.W. Nile, Inc., was located in Massachusetts until he sold the business in 1976 and funded the trust with the proceeds of that sale. His contacts with Massachusetts were both substantial and sufficient for the Superior Court to exercise personal jurisdiction over his personal representatives. See *Ross* v. *Ross, supra*; *Carlson Corp.* v. *University of Vt.*, 380 Mass. 102 (1980); *Saporita* v. *Litner*, 371 Mass. 607, 618 (1976). See also G. L. c. 199A, § 9. It is immaterial that Nile's successor trustees had no contacts with Massachusetts. Nile had the requisite contact, so jurisdiction extends to the trustees as his personal representatives.

This case is distinguishable from both *Hanson* v. *Denckla*, 357 U.S. 235 (1958), and *Keats* v. *Cates*, 100 Ill. App. 2d 177 (1968), on which the defendants rely. In *Hanson*, the settlor of a Delaware trust had transacted no business in Florida, where she had relocated, that would empower a Florida court to exercise personal jurisdiction over her Delaware trustee. By contrast,

Nile executed a contract in Massachusetts from which this action arose. In *Keats*, a husband and wife executed a contract in Illinois to maintain reciprocal wills. After the wife died, the husband moved to California and remarried. He executed a new will and therein created a testamentary trust with provisions for disposition of his personal property in a manner that violated his contract with his first wife. The beneficiaries under the first wife's will brought an action in Illinois to set aside the California testamentary trust. The Illinois appellate court held that that State's courts could not exercise personal jurisdiction over the California executor and trustee on the strength of an agreement to make a will. *Keats* did not involve a revocable inter vivos trust created for the benefit of the settlor, as here. The court also noted that parallel proceedings had been commenced in California to set aside the testamentary trust. It easily could have declined jurisdiction on that basis alone. See *Straus v. Straus*, 987 F. Supp. 52, 54 (D. Mass. 1997).

We conclude, therefore, that the defendants are subject to the personal jurisdiction of the Superior Court by reason of Nile's contacts with Massachusetts and their status as his personal representatives. *Saporita v. Litner, supra.*

2. *Subject matter jurisdiction.* The defendants argue that the Superior Court lacked subject matter jurisdiction over this controversy because the validity of Robert's claim against the estate and the assets to be included therein are probate issues that fall exclusively under the jurisdiction of the New Hampshire Probate Court.

Their argument misses the mark. The subject matter of this controversy is Robert's claim against Nile for breach of the settlement agreement by failing to bequeath and devise to Robert two-thirds of the property over which Nile had enjoyment and control at the time of his death. Robert's claim is a straightforward action for breach of contract which does not require the Massachusetts courts to determine any issue involving the administration of a New Hampshire probate estate. Any damages recovered here will become an asset of Nile's probate estate, the administration of which will be overseen by the New Hampshire Probate Court. This action merely seeks to marshal assets for inclusion in that probate estate. There has been no showing that this action will interfere with the administration of Nile's estate. See *Saporita v. Litner, supra* at 619. Significantly,

the New Hampshire Probate Court rebuffed the defendants' attempt to thwart Robert's efforts in the Massachusetts courts, and thus with a simple stroke of the pen spoke volumes against the position the defendants advance here in different form.

3. *Motion to dismiss under Mass. R. Civ. P. 12 (b) (6) and (7).* The defendants argue that relief cannot be granted against them because they were not a party to the settlement agreement. They rely on a Superior Court decision having no relevance to the issues here. This is an action seeking, in part, equitable relief in the nature of reach and apply. See G. L. c. 214, § 3 (6). Such relief has been approved in cases such as this. See *State St. Bank & Trust Co.* v. *Reiser, supra.* Contrary to the defendants' follow-up argument, Nile need not be named as a party defendant. See *Saporita* v. *Litner, supra; State St. Bank & Trust Co.* v. *Reiser, supra.* In any event, Nile's administrator is a party plaintiff. See Mass. R. Civ. P. 19 (a), 365 Mass. 765 (1974). The defendants are parties by reason of their status as Nile's personal representatives and holders of title to property he wrongfully transferred to them.

The argument that Nile outright could have conveyed assets during his lifetime and thereby placed them out of reach of creditors, including Robert, has no merit for two reasons. First, Nile did not convey the assets outright, but retained control over them for his own benefit. Second, an outright conveyance would have violated the covenant of good faith and fair dealing.

Finally, the defendants argue that the count alleging breach of the covenant of good faith and fair dealing should have been dismissed for want of proof of bad faith. "Every contract implies good faith and fair dealing between the parties to it." *Kerrigan* v. *Boston,* 361 Mass. 24, 33 (1972). See *Eaton* v. *Eaton,* 233 Mass. 351, 376 (1919). The covenant requires "that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract . . . ." *Drucker* v. *Roland Wm. Jutras Assocs.,* 370 Mass. 383, 385 (1976), quoting *Uproar Co.* v. *National Broadcasting Co.,* 81 F.2d 373, 377 (1st Cir.), cert. denied, 298 U.S. 670 (1936). A duty under a general agreement to devise or bequeath a portion of one's estate can be satisfied by inter vivos gifts made in good faith that are reasonable in amount under all the circumstances. See *Eaton* v. *Eaton, supra* at 375-376. See also 1 W. Page, Wills § 10.23, at 492-493 (Bowe-Parker rev. ed. 1960). There is no requirement that bad

faith be shown. See *Larson* v. *Larson*, 37 Mass. App. Ct. 106, 109-110 (1994). Restatement (Second) of Contracts § 205 comment a (1979). A showing of a lack of good faith is required in such circumstances, but it may be inferred by evidence that the inter vivos gift was unreasonable under all the circumstances. *Eaton* v. *Eaton, supra.*

By codicil, Nile wrote Robert out of his will. Through the trust, he left Robert less than one-sixth of his estate. At the same time he directed his trustees to hold the remaining five-sixths of his property for Dorothy. Through a comprehensive estate plan, Nile designed these transfers to take effect on his death. Had he structured these same dispositions by will, there can be no doubt that they would have violated the terms of the settlement agreement under which he was obligated to leave Robert fully two-thirds of his estate. Under the terms of the trust, Robert was to receive less than one-fourth of what Nile had agreed to leave him by will. The trust had "the effect of destroying . . . [Robert's] right . . . to receive the fruits of the [settlement agreement]." *Drucker* v. *Roland Wm. Jutras Assocs., supra.* The judge correctly concluded as matter of law that Nile was not free to divest himself of his assets to the degree he had, where the gift to Dorothy left Robert with an amount so disproportionately below what he was entitled to receive under the settlement agreement, and that the result was a violation of the covenant of good faith and fair dealing. See *Eaton* v. *Eaton, supra*; *Dickinson* v. *Lane*, 193 N.Y. 18, 25 (1908). There was no error.

4. *Meaning of "estate."* The defendants argue that the judge erred by construing the word "estate" in Clause Five of the settlement agreement to mean all property that Nile enjoyed and controlled up to his death, rather than his *probate* estate. Clause Five required Nile to maintain in effect a will which would bequeath and devise to his children "not less than two-thirds of his estate." The defendants rely upon hypothetical illustrations of what they claim Nile could have done during his lifetime, including a complete divestiture of assets such that nothing would be left for probate. As discussed in part 3, *infra*, the argument defies the covenant of good faith and fair dealing, and we reject it. See *Eaton* v. *Eaton, supra.* See also W. Page, Wills, *supra.* As to this same argument, it was said one hundred years ago:

"But it is said that the (promisor) complied with his promise to plaintiff by making his will giving all of the property of which he died seised and possessed. This, as it seems to us, we must say is a mere play upon words. To say that a person has fulfilled his agreement to give to another all of his property at his death in consideration of valuable services performed by making his will in accordance with such agreement, and then to turn right around and annul and effectually destroy such testamentary provision by conveying away all of his property to another, leaving nothing whatever upon which the will could operate, would be but 'keeping the word of promise to the ear and breaking it to the hope.' Such a mode of performing an agreement certainly cannot be recognized by a court of equity."

*Bruce* v. *Moon*, 57 S.C. 60, 71-73 (1900). We are aware of no developments in the law of contracts, wills, or equity in the past century that warrant revisiting the correctness of this principle to accommodate the questionable logic and social utility of the position here advanced. In a case having significant similarities to the one at hand, Judge Widener said in a concurring opinion that it would violate established authority and public policy for an individual to have an estate to live on, but not an estate from which his debts could be paid. See *United States* v. *Ritter*, 558 F.2d 1165, 1168 (4th Cir. 1977) (Widener, J., concurring). The judge correctly determined that Nile's estate, as referred to in Clause Five of the settlement agreement, meant the estate he enjoyed and over which he exercised control during his lifetime.

5. *Constructive trust.* The defendants argue that the imposition of a constructive trust under Massachusetts law was error because New Hampshire law governs the remedy to be applied, and such a remedy is not available under the law of New Hampshire. We disagree.

Their first argument depends on the premise that this case involves the administration of trusts, not breach of contract. We take a different view, notwithstanding the provision in Article IV of the trust that directs the trustees to pay all of Nile's debts as determined by his executor. The Restatement (Second) of Conflict of Laws § 272 (1971) provides that issues of the administration of an inter vivos trust be determined by local law, here, New Hampshire. Comment a to that section and com-

ment a to § 271 identify matters of administration as the business and management of a trust. They do not include the equitable removal of assets wrongfully transferred to a trust, as here. This case involves a breach of contract, and therefore we ask which State, Massachusetts or New Hampshire, has the most significant relationship to the transaction. See *Choate, Hall & Stewart* v. *SCA Servs., Inc.*, 378 Mass. 535, 540-542 (1979). See also *Ellis* v. *Royal Ins. Cos.*, 129 N.H. 326, 330-331 (1987); Restatement (Second) of Conflicts of Laws § 188 (1971). The settlement agreement did not express a choice of law so we look to factors such as those enumerated in Restatement (Second) of Conflicts of Laws § 188(2).

The judge concluded that Massachusetts had the most significant contacts because the settlement agreement was negotiated and executed in Massachusetts; it was made in settlement of a long-term marriage which had a Massachusetts domicile; the beneficiaries of the contract were, and remain, residents of Massachusetts; and the settlement agreement had as a condition precedent the approval of a Massachusetts probate judge, the petition for which Nile signed and thereby submitted to the jurisdiction of a Massachusetts court. To these reasons we add that Nile's administrator is a plaintiff in this action, and the New Hampshire Probate Court that appointed the administrator implicitly sanctioned his lawsuit by having declined to remove him on Dorothy's motion. In addition, performance of the agreement, i.e., the payment of money, is to be completed by delivery in Massachusetts. See Restatement (Second) of Conflicts of Laws § 188(3). New Hampshire, by contrast, is the situs of the trust and the place of residence of the trustees, as well as of Nile at the time of his death. We agree that the interest of Massachusetts in this matter is the more substantial of the two States, and its law of contracts should govern.

The use of a constructive trust here was appropriate under Massachusetts law where the property passed to the trustees because Nile breached his duty to Robert under the settlement agreement, and failure to impose the trust would result in the unjust enrichment of another. See *Fortin* v. *Roman Catholic Bishop of Worcester*, 416 Mass. 781, 789, cert. denied, 511 U.S. 1142 (1994); *Glick* v. *Greenleaf*, 383 Mass. 290 (1981). It is established that the heirs, next of kin, devisees, or personal representatives of a person determined to have breached an agreement to bequeath property to another shall hold such

property in trust for the promisee. See W. Page, Wills, *supra* at § 10.30, at 504-508.

There is nothing in New Hampshire jurisprudence to the contrary. In *Hanke* v. *Hanke*, 123 N.H. 175 (1983), on which the defendants rely, the court looked to a wife's intent when she created a revocable inter vivos trust which she funded with ninety-eight per cent of her assets. The trust provided that her husband would enjoy the interest thereon during his life. The husband tried to reach the trust assets by waiving the wife's will and claiming his statutory interest in her estate, further claiming that the inter vivos transfer to the trust was illusory. The court held that the husband could succeed by establishing that his wife intended to defraud him by creating the trust. *Id.* at 178-179. Here, Robert met the equivalent proof by establishing that Nile breached the settlement agreement and attempted to deprive him of a disproportionately large portion of what he otherwise was entitled to receive. Proof of fraud was not required because, unlike *Hanke*, there was a written contract that established a duty. See *Eaton* v. *Eaton, supra* at 371-372. There was no error.

6. *Credit for distributions to Robert.* The defendants contend that Robert should not be allowed to receive two-thirds of the trust property in the trust, determined as of Nile's death, plus monies provided for him under the family trust. We agree, and note that the Superior Court judge agreed as well. In her amended judgment the judge ordered a credit to the defendants for distributions made to Robert under the family trust, and further ordered that Robert waive any rights he may have to further distributions under the family trust. The defendants have already received the relief they request.

7. *Summary judgment.* The defendants argue that summary judgment is inappropriate because there exists a genuine issue of material fact. In particular, they claim there exists a question of the ownership of assets in the trust which precludes relief being granted. The judge addressed this issue and properly concluded that the affidavits purporting to create this factual issue were based on inadmissible hearsay. See *Symmons* v. *O'Keeffe*, 419 Mass. 288, 295 (1995). Further, Dorothy, who now claims joint ownership, signed a Federal estate tax return on behalf of the trust under penalties of perjury in which she reported that the vast majority of the assets held by the trust

were the sole property of Nile which he transferred to the trust during his lifetime.

*Judgment affirmed.*