CONSTANCE E. KRAPF vs. ALBERT H. KRAPF.

Middlesex. February 4, 2003. - April 2, 2003.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Divorce and Separation,* Separation agreement, Pension benefits, Attorney's fees. *Pension. Veteran. Declaratory Relief. Practice, Civil,* Declaratory proceeding, Attorney's fees. *Res Judicata.*

In a civil action seeking a declaration of the parties' entitlement to military retirement and veterans' disability benefits under the parties' separation agreement, the judge did not err in ordering the husband to pay to the plaintiff wife the equivalent of fifty per cent of the military retirement pension that the husband would have received if he had not waived his entitlement to the same by accepting veterans' disability benefits, where by waiving his pension to receive the disability benefits subsequent to the execution of the separation agreement, the husband in effect deprived the wife of her entitlement to her share of the pension, thus violating the husband's high obligation of good faith and fair dealing in both the execution and the performance of the surviving separation agreement. [103-109]

In a civil action seeking a declaration of the parties' entitlement to military retirement and disability benefits under the parties' separation agreement, the judge did not err in awarding the plaintiff attorney's fees, where the separation agreement provided that the party in breach of its provisions would be responsible for all reasonable costs incurred by the nonbreaching party to enforce the agreement. [109]

This court was unable to determine whether the adjudication of a prior complaint for contempt constituted a bar to a civil action seeking a declaration of the parties' entitlement to military retirement and disability benefits under the parties' separation agreement, where the record was not sufficiently developed to enable the court to determine the judge's reasons for dismissing the complaint for contempt with prejudice. [109-110]

CIVIL ACTION commenced in the Middlesex Division of the Probate and Family Court Department on October 6, 2000.

The case was heard by *Beverly Weinger Boorstein,* J., and a motion for reconsideration was heard by *Judith Nelson Dilday,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Clarence V. LaBonte, Jr.* (*F. Joseph Gentili* with him) for Albert H. Krapf.

*Joseph S. Tangusso* for Constance E. Krapf.

MARSHALL, C.J. Albert H. Krapf (defendant) appealed from a declaratory judgment ordering him to pay to his former spouse, Constance E. Krapf (plaintiff), an amount equal to the military pension income she would have received pursuant to the parties' separation agreement (agreement) had the defendant, after the divorce, not voluntarily and without the plaintiff's consent waived his military retirement benefits in order to receive Veterans Administration (VA) disability payments. The defendant also appealed from the judge's order that he pay the plaintiff's appellate attorney's fees pendente lite. The Appeals Court affirmed the declaratory judgment with modifications. *Krapf* v. *Krapf,* 55 Mass. App. Ct. 485, 492 (2002). We granted the defendant's application for further appellate review. We conclude that the judge acted properly in construing and specifically enforcing the agreement and in awarding the plaintiff appellate counsel fees, pendente lite. Accordingly, we affirm the declaratory judgment, as modified by the Appeals Court, see *id.,* and the award of attorney's fees.

1. *Facts.* The core facts are undisputed. In 1984, after twenty-seven years of marriage and three children, the defendant filed for divorce from the plaintiff. At the time, the plaintiff was approximately fifty-one years old; the record does not disclose either her health status or her employment status. The defendant was approximately forty-nine years old. He was on inactive or reserve duty in the United States Army. According to his counsel at oral argument, the defendant was "able bodied," in good health, and suffered from no known or suspected disability.

On December 5, 1985, the parties entered into the separation agreement, three provisions of which are germane to this case. First, the parties agreed that the plaintiff would receive $200 a month in alimony for seven months, and that "[t]hereafter, neither [party] will make any claim against the other for alimony, support or maintenance." Second, the parties agreed that the defendant would "cause to be entered by the Middlesex Probate Court an order allocating half his pension rights with the U.S. Army to the [plaintiff]." Third, the parties provided

that, if the agreement were breached, the breaching party "shall be responsible for all reasonable costs incurred by the non-breaching party to enforce" the agreement.[1] The agreement was incorporated in the divorce judgment but survived as an independent contract.[2]

On June 2, 1986, a judge in the Probate and Family Court entered a qualified court order, see 10 U.S.C. § 1408(a)(2) (2000),[3] directing the Secretary of the Army to apportion to the plaintiff fifty per cent of the defendant's "disposable retire-[ment] or retainer pay" accrued as of December 5, 1985, the date of the judgment of divorce nisi.[4] The qualified court order stated that it was "intended to carry out an approved property settlement" entered in connection with the judgment nisi. In May, 1994, the defendant separated from the army after thirty-seven years of service. Both he and the plaintiff began receiving their respective fifty per cent allotment of the defendant's

[1]The agreement also contained general representations that the parties had made full financial disclosure to each other; that they had entered into the agreement freely, voluntarily, and fully apprised of their rights; and that they believed that the agreement was "fair, adequate and reasonable" in light of the factors set out in G. L. c. 208, § 34. The parties agreed to submit "any dispute or disagreement concerning the performance, interpretation, meaning or application of" the agreement to the Probate and Family Court.

[2]In 1989, the parties modified the agreement to reduce the sum the plaintiff was due from the sale of certain real estate and to modify certain child-related provisions. The modification, which survived, also restated the alimony waiver. The terms of the modification agreement are not relevant to this appeal.

[3]"The term 'court order' means a final decree of divorce, dissolution, annulment, or legal separation issued by a court, or a court ordered, ratified, or approved property settlement incident to such a decree (including a final decree modifying the terms of a previously issued decree of divorce, dissolution, annulment, or legal separation, or a court ordered, ratified, or approved property settlement incident to such previously issued decree) . . . which . . . provides for . . . division of property . . . ." 10 U.S.C. § 1408(a)(2)(B)(iii) (2000).

[4]See 10 U.S.C. § 1408(a)(4) (2000) (defining "disposable retired pay"). State courts are authorized to treat disposable retired pay as sole property or as marital property in accordance with the law of the court's jurisdiction pursuant to 10 U.S.C. § 1408(c). "[D]isposable retired pay" excludes military retirement pay waived to receive Veterans Administration (VA) disability benefits. See 10 U.S.C. § 1408(a)(4)(B). Presently, every State appears to consider military retirement pay to be divisible marital property. See Note, State-by-State Analysis of the Divisibility of Military Retired Pay, Army Law. 42 (Aug 2002).

military retirement benefit, including periodic cost-of-living increases, directly from the Department of Defense. See 10 U.S.C. § 1408(d) (2000).

In early 1997, without the plaintiff's knowledge, the defendant applied for VA disability benefits on the ground that he suffered from posttraumatic stress disorder stemming from his army service. See 38 U.S.C. § 1110 (2000) (wartime disability). In April, 1997, the VA classified the defendant as ten per cent disabled. In April, 1998, it reclassified him as fifty per cent disabled; and in June, 2000, it reclassified him as one hundred per cent disabled. With each determination of increased disability, the defendant received a commensurate increase in VA disability income. However, because Federal law prohibits a military retiree from "double dipping" into Federal retirement accounts, see *Mansell* v. *Mansell*, 490 U.S. 581, 583 (1989), the defendant executed a waiver that reduced his military retirement payments one dollar for every dollar of VA disability payments he received. See 38 U.S.C. § 5305 (2000).[5] Because the waiver applied to the defendant's total military retirement pay, his election to forgo his army pension reduced not only his own military retirement income but also that of the plaintiff, as follows:

April, 1997, reduced from $1,009.04 to $969.09 a month;
May, 1998, reduced from $969.09 to $797.38 a month;
June, 2000, reduced from $787.38 to $145 a month.

As of April 4, 2001, the defendant's total VA disability payment was $2,166, an amount that included a stipend for his current wife. He received an additional $145 each month in military retirement pay. The plaintiff received only $145 each month in military retirement pay. In other words, after he obtained a one hundred per cent disability rating, the defendant's service-related income more than doubled, while his former wife's service-related income fell by approximately eighty-six per cent.

On July 19, 2000, the plaintiff filed a contempt complaint against the defendant in the Probate and Family Court, alleging

[5]Unlike military retirement pay, VA disability pay is exempt from taxation. See 38 U.S.C. § 5301(a) (2000). "Not surprisingly, waivers of retirement pay [to receive VA disability benefits] are common." *Mansell* v. *Mansell*, 490 U.S. 581, 584 (1989).

that he violated the qualified court order by "unilaterally" electing to make changes in his disposable military retirement income that resulted in the reduction of her own pension income. On September 18, 2000, a judge in the Probate and Family Court summarily dismissed the complaint with prejudice.[6] On October 6, 2000, the plaintiff filed a complaint for declaratory judgment pursuant to G. L. c. 231A in the Probate and Family Court. She alleged that the defendant's actions in seeking and obtaining VA disability pay "defeated the intentions of the parties" under the agreement that the plaintiff would receive one-half of the defendant's military retirement pay. The plaintiff sought a declaration of the rights of the parties concerning the VA and Department of Defense payments, an award of an amount that would "restore [the plaintiff] to the financial position she would have enjoyed from April, 1997 to date," and counsel fees. The defendant answered and filed a motion to dismiss pursuant to Mass. R. Civ. P. 12 (b) (5) and Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1994). He claimed that he was in compliance with the agreement that the plaintiff receive fifty per cent of his disposable retired or retainer pay accrued as of December 5, 1985, and thus there was no controversy. He also claimed that the complaint for declaratory judgment was an impermissible attempt to circumvent final and binding determination on the merits occasioned by the dismissal with prejudice of the contempt action. See Mass. R. Civ. P. 41 (b) (3), 365 Mass. 803 (1974). Waiving a hearing, the parties submitted the case on the pleadings and on a statement of agreed facts.[7]

On April 4, 2001, the judge issued a memorandum of deci-

---

[6]The dismissal was issued without explanation by way of a notation on the complaint, and the record fails to disclose the reasons for the judge's determination. In a subsequent pleading in the declaratory judgment action, the plaintiff claimed that the defendant argued at the contempt hearing that, because the defendant's actions were not so culpable as to give rise to a contempt judgment, the plaintiff should have filed either a modification complaint or a declaratory judgment action and the contempt action should be dismissed. We do not have the benefit of a transcript of that hearing.

[7]They also submitted financial statements showing that the plaintiff's adjusted net weekly income from all sources was $389.13 and that the defendant's adjusted net weekly income from all sources was $1,423. The plaintiff claimed assets valued at approximately $103,000 and liabilities of approximately $9,000. The defendant claimed assets valued at approximately $508,000 and liabilities of approximately $16,000.

sion and entered declaratory judgment for the plaintiff. She concluded that the defendant impermissibly modified the agreement by divesting himself of an asset that he had legally pledged to the plaintiff in which she thus had a vested interest, and from which she had a reasonable expectation of receiving income. See *Nile* v. *Nile*, 432 Mass. 390, 398-399 (2000). She further held that, in so acting, the defendant violated his fiduciary obligation to his former spouse, see *Eaton* v. *Eaton*, 233 Mass. 351, 370 (1919), the covenant of good faith and fair dealing inherent in all contracts, see *Kerrigan* v. *Boston*, 361 Mass. 24, 33 (1972), and the court's authority and obligation to provide equitably for divorcing spouses. See G. L. c. 208, § 34. The judge "specifically enforc[ed]" the agreement by ordering the defendant to pay to the plaintiff an amount that, when added to the amount the plaintiff currently received, was the equivalent of fifty per cent of his pension "if same was in payout status." The judge also ordered the defendant to pay arrearages accumulated from April, 1997, to the judgment date. She declined to award attorney's fees "[a]s this is a case of first impression . . . ."

The defendant filed a motion for reconsideration pursuant to Mass. R. Civ. P. 52 (b), as amended, 423 Mass. 1402 (1996), on the ground that the judgment constituted a division of his military disability pay in violation of 38 U.S.C. § 5301 (2000) (exempting VA disability payments from certain creditors' claims and enforcement mechanisms). The judge denied the motion, and the defendant appealed from both the April 4, 2001, declaratory judgment and the denial of his reconsideration motion. In May, 2001, the plaintiff filed a motion to restrain the defendant from diminishing his assets and a motion for attorney's fees pendente lite to defend against the appeal. Another Probate and Family Court allowed both motions, and the defendant filed a motion for reconsideration of both orders. When the motion was denied, he timely filed a second notice of appeal.[8] He also filed motions to stay the award of attorney's fees in the Probate and Family Court and in the Appeals Court, respectively. Both motions were denied.

---

[8]The second notice appealed from the April 4, 2001, judgment, the denial of the motions to reconsider the judgment, the order to restrain dissipation of assets, and the order to pay attorney's fees. On appeal, the defendant does not

On the main appeal, the Appeals Court affirmed the order of the trial judge in all respects, except that it modified the judgment to include "a declaration that the plaintiff is entitled to receive from the defendant, pursuant to the agreement, a sum of money per month equivalent to fifty per cent of the monthly military retirement pay that the defendant would receive if his military retirement pay were not reduced by the disability payments minus the monthly military retirement pay the plaintiff receives directly from the Department of Defense." *Krapf* v. *Krapf*, 55 Mass. App. Ct. 485, 492 (2002). We granted the defendant's application for further appellate review.

2. *Separation agreement.* A policy of long standing in our Commonwealth encourages divorcing couples to resolve their marital disputes by mutual agreement rather than resort to litigation. See G. L. c. 208, § 1A; *Knox* v. *Remick*, 371 Mass. 433, 436 (1976); *Buckley* v. *Buckley*, 42 Mass. App. Ct. 716, 720 n.3 (1997). To that end, our laws permit divorcing parties to enter into written separation agreements, which they may elect to survive the divorce judgment as independent contracts. See *Moore* v. *Moore*, 389 Mass. 21, 24 (1983) (noting Commonwealth's "strong policy . . . favor[ing] survival of separation agreements, even when such an intent of the parties is merely implied"). Such surviving separation agreements may secure with finality the parties' respective rights and obligations concerning the division of marital assets, among other things, according to established contract principles. See, e.g., *Larson* v. *Larson*, 37 Mass. App. Ct. 106 (1994); *DeCristofaro* v. *DeCristofaro*, 24 Mass. App. Ct. 231, 236-237 (1987).

However, spouses who enter into agreements with each other are held to standards higher than those we tolerate in the arm's-length transactions of the marketplace. Parties to a separation agreement stand as fiduciaries to each other, and will be held to the highest standards of good faith and fair dealing in the performance of their contractual obligations. See *Eaton* v. *Eaton*, *supra* at 370. See also *Larson* v. *Larson*, *supra* at 109.

press his argument on the motion to restrain dissipation of assets, and we treat the issue as waived. See *Matter of a Care & Protection Summons*, 437 Mass. 224, 234 n.19 (2002). See also Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 921 (1975).

Moreover, a separation agreement is a "judicially sanctioned contract" that is valid and enforceable only if and as approved by the judge. *Bell* v. *Bell,* 393 Mass. 20, 26 (1984), cert. denied, 470 U.S. 1027 (1985) (Abrams, J., dissenting). In deciding whether to approve a separation agreement, judges have their own independent duty to ensure that the division of the marital estate is fair and reasonable in accordance with the factors set out in G. L. c. 208, § 34. See *Knox* v. *Remick, supra* at 436-437. Cf. *Barry* v. *Barry,* 409 Mass. 727, 732 (1991) (judge's finding agreement fair and reasonable not explicitly stated on record did not warrant reconsideration of issue). Among other things, a judge must ensure that the division of marital property is equitable in the circumstances. The equitable division of marital assets cannot be considered in a vacuum; property division is but one aspect of the finances of the divorcing household that the judge must consider. See G. L. c. 208, § 34; *Caccia* v. *Caccia,* 40 Mass. App. Ct. 376, 382 (1996). See also *Andrews* v. *Andrews,* 27 Mass. App. Ct. 759, 761 (1989) (combination of alimony and equitable division pursuant to G. L. c. 208, § 34, "must make sense").

The Legislature has recognized that pensions often constitute valuable marital assets. General Laws c. 208, § 34, specifically directs the court to consider the equitable division of "retirement benefits," including "military retirement benefits if qualified under and to the extent provided by federal law," when apportioning the marital estate.[9] See *McMahon* v. *McMahon,* 31 Mass. App. Ct. 504, 508-509 (1991) (dividing military retirement benefit as marital asset). The parties in this case do not dispute that, at the time they entered into the agreement, the defendant's "pension rights with the U.S. Army" constituted divisible marital property to be equitably divided in accordance with G. L. c. 208, § 34. Their disagreement centers on whether the defendant in fact breached the agreement by waiving his military retirement benefits in order to receive VA disability benefits. In other words, their dispute is a matter of contract interpretation, which is a question of State law to be decided by the court. The agreement does not define the term "pension

[9]Military retirement pay may also be considered a "stream of income" for purposes of alimony. *Andrews* v. *Andrews,* 27 Mass. App. Ct. 759, 759 (1989).

rights with the U.S. Army," and the judge made no specific findings regarding the parties' intent in using those words. However, we must construe the agreement in a manner that "appears to be in accord with justice and common sense and the probable intention of the parties . . . [in order to] accomplish an honest and straightforward end [and to avoid], if possible, any construction of a contract that is unreasonable or inequitable." *Clark* v. *State St. Trust Co.*, 270 Mass. 140, 153 (1930).

Applying these basic contract principles, we have no difficulty in concluding that the parties intended the term "pension rights with the U.S. Army" to mean exactly what it says: the totality of benefits due to the defendant on his retirement from the army. We draw our conclusions from the entire agreement itself and from the context of its execution. See *id.*; *DeCristofaro* v. *DeCristofaro*, *supra* at 237, and cases cited. Although the parties have not furnished us with their financial statements as of the date of the judgment nisi, we infer from the agreement that the defendant's military pension was among their most substantial marital assets. It was, at any rate, valuable enough to the plaintiff in this long-term marriage to induce her to waive any entitlement to alimony, support, or maintenance for an agreement that gave her an enforceable, vested interest in one-half of the defendant's military retirement benefits. It is highly unlikely that she negotiated such an agreement intending to give the defendant carte blanche to reduce the value of her pension to a pittance in order to benefit himself. Nothing in the agreement suggests such authorization. We think it far more likely that the agreement gave her a "reasonable expectation" that she would receive pension income in her later years. See *Schaer* v. *Brandeis Univ.*, 432 Mass. 474, 478 (2000). We also credit the representation of the defendant's counsel that, as of the date of the agreement, the defendant was able bodied and no longer on active duty, and that neither party had reason to anticipate a disability claim stemming from his active service. That the defendant waived the joint military retirement rights unilaterally further confirms our conclusion that, at the time they entered into the agreement, each party expected and intended that the plaintiff would receive one-half of the

defendant's full "pension rights with the U.S. Army" when he retired.

The defendant challenges this construction of the contract by claiming now that the plaintiff continues to reap the benefits of her bargain and that he had no control over the evaporation of her pension income. But the defendant's military retirement benefit did not become essentially worthless because of changes in the law or changes in the market. It became worthless because of the defendant's unilateral and voluntary action. We respect the defendant's long years of service and sacrifice in the armed forces, but cannot escape the conclusion that by converting his and the plaintiff's military retirement benefits to VA disability benefits for his own benefit, see note 5, *supra*, he denied the plaintiff the fruits of her bargain in breach of his continuing duty to exercise the utmost good faith and fair dealing in performing his obligations under the agreement. See *Nile* v. *Nile*, 432 Mass. 390, 398-399 (2000) (breach of implied covenant of good faith and fair dealing does not require showing of bad faith; lack of good faith may be inferred by considering totality of circumstances).

This case bears strong similarities to *Nile* v. *Nile, supra.* There, a party to a postdivorce settlement agreement agreed to bequeath the majority of his estate to the children of his former wife. Subsequently, he poured most of his assets into a revocable inter vivos trust in favor of his new wife, with the result that, when he died, the children of his former wife were left with nothing in the probate estate and very little from the trust. Relying on one hundred years of contract law, we held that, by destroying or injuring the rights of the children of his first marriage to receive the benefit of his agreement with his former wife, the decedent breached his continuing duty of good faith and fair dealing. See *id.* at 398-400, and cases cited. We rejected the trustees' argument that the agreement merely required the decedent to leave the bulk of his "probate" estate to his heirs, while leaving the decedent free to empty the probate estate of all value. *Id.* at 399. A court of equity, we said, will not countenance such "questionable logic," nor permit "an individual to have an estate to live on but not an estate from which his debts could be paid." *Id.* at 400.

The defendant is correct that he was permitted by Federal law to seek and obtain VA disability payments, and that the characterization of his disability and degree of impairment rested with the VA. But a court in equity will not sanction voluntary action that amounts to an "evasion of the spirit of the bargain." *Larson* v. *Larson*, 37 Mass. App. Ct. 106, 110 (1994), quoting Restatement (Second) of Contracts § 205 comment d (1981). See *Nile* v. *Nile*, *supra* at 398-399. To conclude otherwise would negate a divorcing spouse's high obligation of good faith and fair dealing in both the execution and the performance of a surviving separation agreement.

We also reject the defendant's argument that the judge improperly transgressed the declaratory judgment statute by effectively converting a declaratory judgment action under G. L. c. 231A into a modification proceeding under G. L. c. 208, § 37, and then reapportioning the division of marital property contrary to established law. See *Bush* v. *Bush*, 402 Mass. 406, 409 (1988) ("The parties to a divorce may not relitigate the division of property that already has been the subject of a proceeding under G. L. c. 208, § 34"). See also *Taverna* v. *Pizzi*, 430 Mass. 882, 886 (2000); *Drapek* v. *Drapek*, 399 Mass. 240, 244 (1987). First, the Legislature has directed courts to construe and administer the declaratory judgment remedy broadly in order "to remove, and to afford relief from, uncertainty and insecurity with respect to rights, duties, status and other legal relations." G. L. c. 231A, § 9. Second, contrary to the defendant's assertions, a judge may order monetary relief in a declaratory judgment action. See *Trustees of Dartmouth College* v. *Quincy*, 331 Mass. 219, 227-228 (1954). Finally, as the trial judge noted, it was the defendant himself, and not the judge, who unilaterally and impermissibly accomplished a de facto modification of the agreement. The judge merely exercised her well-established equitable authority to construe the agreement to effectuate the parties' intent in circumstances where the contracted-for method of paying the plaintiff her equitable share of the marital estate was no longer available because of the defendant's actions.

While not dispositive on this matter of first impression in Massachusetts, we note that many other State appellate courts have ordered similar relief against military retirees who waive

the military retirement benefits pledged to a former spouse under a separation agreement in order to obtain VA disability payments. See, e.g., *Dexter* v. *Dexter,* 105 Md. App. 678, 685-686 (1995); *In re Marriage of Stone,* 274 Mont. 331, 336 (1995); *Blissit* v. *Blissit,* 122 Ohio App. 3d 727, 733 (1997); *Johnson* v. *Johnson,* 37 S.W.3d 892, 897 (Tenn. 2001). See also *Clauson* v. *Clauson,* 831 P.2d 1257, 1263 (Alaska 1992) (court may "consider[] veterans' disability benefits as they affect spousal maintenance or the equitable allocation of the parties' assets"). But see *Matter of the Marriage of Pierce,* 26 Kan. App. 2d 236, 242 (1999).[10]

*Mansell* v. *Mansell,* 490 U.S. 581 (1989), does not compel a different result, but holds that the Uniformed Services Former Spouses' Protection Act, 10 U.S.C. § 1408 (2000), which provides for the divisibility of military retirement pensions, does not permit State courts "to treat as property divisible upon divorce military retirement pay that has been waived to receive veterans' disability benefits." *Id.* at 595.[11] The judgment in this case does not divide the defendant's VA disability benefits in contravention of the *Mansell* decision; the judgment merely enforced the defendant's contractual obligation to his former wife, which he may satisfy from any of his resources.[12] Nothing in 10 U.S.C. § 1408 or in the *Mansell* case precludes a veteran from voluntarily entering into a contract whereby he agrees to pay a former spouse a sum of money that may come from the VA disability benefits he receives. In upholding the declaratory

---

[10]Other courts have afforded divorced military spouses similar relief based, at least in part, on indemnity provisions in the separation agreement. See, e.g., *Abernethy* v. *Fishkin,* 699 So. 2d 235, 240 (Fla. 1997); *McHugh* v. *McHugh,* 124 Idaho 543, 545 (1993); *Scheidel* v. *Scheidel,* 129 N.M. 223, 226 (Ct. App. 2000); *Hisgen* v. *Hisgen,* 554 N.W.2d 494, 498 (S.D. 1996); *Owen* v. *Owen,* 14 Va. App. 623, 629 (1992); In re Marriage of Choat, Nos. 43291-5-I, 43791-7-I (Wash. Ct. App. July 3, 2000).

[11]The Federal act does permit courts to order alimony payments from VA disability benefits. See 10 U.S.C. § 1408(a)(2)(B)(ii).

[12]Similarly, the defendant's argument that the declaratory judgment amounted to a garnishment or assignment forbidden by Federal law, see respectively 42 U.S.C. § 659 (2000) and 38 U.S.C. § 5301 (2000), is unavailing. The judgment did not "turn [the Federal government or any agency of the Federal government] into a collection agency" or require the Federal government to participate in any proceeding or pay money directly to the plaintiff. *Rose* v. *Rose,* 481 U.S. 619, 630, 635 (1987).

judgment, however, we agree with the Appeals Court that the judgment must be modified to declare the respective obligations of the parties.

3. *Other Issues.*

(a) *Attorney's fees.* The defendant claims that the judge lacked authority in a declaratory judgment action to award the plaintiff appellate counsel fees pendente lite "pursuant to" G. L. c. 208, § 38. He does not claim that the amount of fees awarded was unreasonable. We agree with the Appeals Court that this issue is most properly addressed by resort to the plain language of the contract. The agreement provides that a party in breach of its provisions shall be "responsible for all reasonable costs incurred by the non-breaching party to enforce" the agreement. Although we recognize that the judge denied the plaintiff's request for attorney's fees to prosecute the declaratory judgment action on the ground that the case presented an issue of first impression,[13] it was also reasonable for the judge, in the context of this dispute concerning the interpretation and enforcement of a separation agreement, to construe the agreement to require the payment of such fees once the defendant was adjudged in breach and the defendant elected to continue with the litigation. See *Judge Rotenberg Educ. Center, Inc.* v. *Commissioner of the Dep't of Mental Retardation (No.1)*, 424 Mass. 430, 468 (1997) (attorney's fees may be awarded by contract of stipulation, by statute, or by rules concerning damages). Cf. G. L. c. 208, § 38 (permitting award of attorney's fees at judge's discretion in original or subsidiary actions under G. L. c. 208).

(b) *Res judicata.* The defendant claims that the plaintiff was barred from bringing her subsequent action for declaratory judgment because the dismissal with prejudice of her contempt complaint was res judicata on the issue of his liability under the agreement. The Appeals Court rejected this argument on the ground that the record was not sufficiently developed to enable the court to determine the judge's reasons for dismissing the complaint for contempt with prejudice. *Krapf* v. *Krapf*, 55 Mass. App. Ct. 485, 492 (2002). We agree. It is plausible, as the defendant argues, that the judge intended the dismissal of the

---

[13]The plaintiff has not appealed from that denial.

contempt complaint with prejudice as a ruling on the merits of the plaintiff's claim that the defendant violated the agreement when he waived his military retirement benefits for VA disability payments. It is equally plausible, as the plaintiff argues, that the judge dismissed the contempt complaint with prejudice because she concluded that an action for civil contempt was the wrong vehicle to resolve an issue of contract interpretation. See *Diver* v. *Diver*, 402 Mass. 599, 603 (1988) (civil contempt cannot be found absent proof of "a clear and unequivocal command" and "ability to comply"). The defendant bears the burden of proving that the plaintiff's declaratory judgment action should have been dismissed. He has not met that burden.

(c) *Due process.* In his supplemental brief to this court, the defendant claims for the first time that the judge denied him due process by failing to afford the defendant the opportunity to be heard on all relevant issues.[14] As the issue is untimely raised, we do not consider it. See Mass. R. A. P. 16 (a) (4), as amended 367 Mass. 921 (1975), and Mass. R. A. P. 16 (c), as amended, 399 Mass. 1217 (1987).[15] See also *Kelley* v. *Rossi*, 395 Mass. 659, 664 (1985).

4. *Conclusion.* We affirm the declaratory judgment as modified by the Appeals Court and the order awarding the plaintiff attorney's fees pendente lite. We affirm the denial of the defendant's motions for reconsideration.[16]

*So ordered.*

---

[14]To the extent that the defendant's due process argument also maintains that he was denied due process because the judge sua sponte converted the declaratory judgment action into a de facto modification action, this argument has been previously addressed.

[15]In any event, we would be hard pressed to find that the lack of a hearing in this case deprived the defendant of due process where he voluntarily waived such a hearing and agreed to submit the case on the pleadings, and where the judgment considered only the issues of contract interpretation and enforcement raised by the parties.

[16]Our holding today disposes of the need to consider the merits of the defendant's reconsideration motions.