NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

22-P-378                                          Appeals Court

          JULIE RABINOWITZ  vs.  MARK SCHENKMAN.

                       No. 22-P-378.

       Bristol.     May 4, 2023. – November 16, 2023.

           Present:  Vuono, Hand, & Hodgens, JJ.


Contract, Separation agreement, Performance and breach, Implied
     covenant of good faith and fair dealing.  Divorce and
     Separation, Separation agreement, Division of property.
     Evidence, Relevancy and materiality, Guilty plea.
     Practice, Civil, Judgment on the pleadings, Affirmative
     defense, Waiver.


     Civil action commenced in the Superior Court Department on
October 16, 2019.

     A motion for judgment on the pleadings was heard by Renee
P. Dupuis, J.; a motion for reconsideration was considered by
her; and the case was heard by Jackie A. Cowin, J.


     Mark Booker for the plaintiff.
     Charles G. Devine, Jr., for the defendant.


     HODGENS, J.  To effect the gradual division of property

under a separation agreement, Mark Schenkman (husband) made

monthly payments to his former spouse, Julie Rabinowitz (wife).

After the wife tried to kill the husband, payments ceased.  The

wife filed an action for breach of contract in the Superior Court, and the husband asserted that the wife's attempt to murder him excused his further performance. Following a jury-waived trial, judgment entered for the husband on the contract claim. We affirm.

Background. The parties married in 1997 and divorced in 2013 by a judgment of divorce nisi (divorce judgment). The divorce judgment incorporated their stipulation, which granted the husband sole legal and physical custody of the parties' four minor children and deferred for trial the resolution of issues involving alimony, child support, and the division of assets. The parties thereafter resolved those outstanding issues in a separation agreement dated March 17, 2014, which a judge of the Probate and Family Court approved and incorporated into an amended judgment of divorce nisi (amended divorce judgment) dated the same day. All child-related provisions merged with the amended divorce judgment; the remaining provisions survived the judgment as an independent contract. Among other provisions, the separation agreement required the husband to pay the wife $212,000 over five years in sixty equal monthly payments of $3,533.33. These payments represented the wife's share of the marital estate that stemmed from the value of the husband's ownership of his ongoing dental practice. The separation agreement also required the husband to maintain a

life insurance policy to secure this property division obligation in the event that he died before making all the payments. The husband made the required payments over the next seventeen months through August 1, 2015.

On August 11, 2015, the wife attacked the husband and the parties' nine year old son with a hatchet outside the husband's dental practice. In the pandemonium of the attack, the wife accused the husband of ruining her "reunification plans" that were "in the works" for the children. The husband ceased making payments. A grand jury returned five indictments against the wife. On December 16, 2015, the wife pleaded guilty to armed assault with intent to murder, one count of assault and battery by means of a dangerous weapon, one count of assault and battery, and two counts of assault by means of a dangerous weapon. A Superior Court judge sentenced her to two and one-half years in the house of correction, one year to serve, the balance suspended for ten years of probation. The husband did not make any payments to the wife after the attack.

On October 16, 2019, the wife filed a complaint in the Superior Court alleging breach of contract by the husband based on his failure to make the monthly payments required by the separation agreement. Following a jury-waived trial, the judge found that the wife's attempt to kill the husband was "part of a woefully misguided plan to regain custody of her children" and

was an attempt to interfere with the husband's "buyout" of the wife's share in the dental practice. The judge concluded that the husband was excused from further performance of the separation agreement because the wife's attempt to murder him constituted a violation of the covenant of good faith and fair dealing implicit in the separation agreement and incorporated into the amended divorce judgment.

On appeal, the wife claims that the motion judge erred by failing to grant her motion for judgment on the pleadings. She also claims that the trial judge erred by (1) taking judicial notice of the parties' custody stipulation which was not part of the separation agreement; (2) allowing testimony regarding the hatchet attack; (3) giving preclusive effect to her guilty pleas; and (4) applying the covenant of good faith and fair dealing.

Discussion. "The standard of review is well established. The findings of fact of the judge are accepted unless they are clearly erroneous." T.W. Nickerson, Inc. v. Fleet Nat'l Bank, 456 Mass. 562, 569 (2010). "We review the judge's legal conclusions de novo." Id. After addressing each argument raised by the wife, we discern no error and affirm.

1. Motion for judgment on the pleadings. The wife claims that the motion judge erred by denying her motion for judgment on the pleadings because the husband's answer did not deny any

material facts and only recited "boilerplate" affirmative defenses. We disagree. A judgment on the pleadings is appropriate in "the rare case where the answer admits all the material allegations of the complaint." 1973 Reporter's Notes to Mass. R. Civ. P. 12 (c), Massachusetts Rules of Court, Rules of Civil Procedure, at 25 (Thomson Reuters 2023). "If the defendant pleads by denial or by affirmative defense so as to put in question a material allegation of the complaint, judgment on the pleadings is not appropriate" (emphasis added). Tanner v. Board of Appeals of Belmont, 27 Mass. App. Ct. 1181, 1182 (1989). Here, the husband filed a four-page answer that included seven affirmative defenses disputing the wife's performance of contractual obligations and claiming that the wife prevented him from performing his obligations. Such affirmative defenses showed a factual dispute and "provide[d] notice to the plaintiff[] of defenses that will be raised." Demoulas v. Demoulas, 428 Mass. 555, 575 n.16 (1998). Therefore, the motion judge properly denied the motion for judgment on the pleadings.

2. Judicial notice of child custody. In her findings and conclusions, the trial judge took judicial notice of the parties' stipulation incorporated into the divorce judgment that "provided that [the husband] would have sole legal and physical custody of the [parties'] four minor children." Although the

wife urged the trial judge in a posttrial memorandum to "take judicial notice of records of the family court," she now contends that the judge erred by taking notice of the stipulation and argues that the judge should have limited her review to the plain language of the separation agreement regarding property division (attached as exhibit A to her Superior Court complaint).  The wife's contrary position in the trial court bars her claim on appeal.  See Adoption of Astrid, 45 Mass. App. Ct. 538, 542 (1998) ("A party may not raise an issue before the trial court on one ground, and then present that issue to an appellate court on a different ground").  Even if we considered her claim, "a judge may take judicial notice of the court's records in a related action."  Jarosz v. Palmer, 436 Mass. 526, 530 (2002).  Apart from judicial notice, the documentary and testimonial evidence before the judge showed that the husband had custody of the four children.  The separation agreement, exhibit 1 at trial, referenced the "four children," and during the trial the wife testified that the husband "had full custody of the children."  Given this evidence, the judge did not err by considering the husband's custody of the four children in connection with the divorce proceedings.

3.  Motion to exclude evidence of armed assault.  Prior to trial, the wife moved to exclude all evidence related to the

hatchet attack and argued that it was both irrelevant to her contract claim and unduly prejudicial by casting her character in a negative light. The judge denied the motion. On appeal, the wife contends that the trial judge abused her discretion because the evidence was not relevant to the husband's obligation to pay according to the separation agreement. "Whether evidence is relevant is a question addressed to the substantial discretion of the trial judge, whose decision we will not overturn except for palpable error." Kobico, Inc. v. Pipe, 44 Mass. App. Ct. 103, 109 (1997). It is also within the judge's discretion to decide whether the probative value of evidence is "substantially outweighed" by the danger of "unfair prejudice." Mass. G. Evid. § 403 (2023). The evidence here showed that the wife attacked the husband and one of the children with a hatchet and accused the husband of ruining her "reunification plans" that were "in the works" for the children. This evidence spoke to the core of the defense that the attack was an attempt to undo the separation agreement and constituted a breach of the covenant of good faith and fair dealing. We discern no palpable error in the judge's determination. Also, because the evidence addressed a "central issue[]" in the case, the probative value "handily outweighed" any potential that the judge might view the wife's character in a negative light. Gath v. M/A-Com, Inc., 440 Mass. 482, 491 (2003). See Commonwealth

v. Beaulieu, 3 Mass. App. Ct. 786, 787 (1975) ("The trial judge, sitting without a jury, is presumed, absent contrary indication, to have correctly instructed himself as to the manner in which evidence was to be considered in his role as factfinder").

4. Evidence of the wife's guilty pleas. Exhibit 2 at trial in the Superior Court included docket entries and indictments from the wife's criminal case where she pleaded guilty to crimes in connection with the hatchet attack on the husband and their child. The trial judge found that "[the wife] tried to kill [the husband] and that she did so in an attempt to further her plans to regain custody of the children." The wife now contends that the judge erred because evidence of the guilty pleas is not sufficient to support the judge's finding. We disagree. "[A] defendant's guilty plea is not without consequence in subsequent civil litigation. The defendant's guilty plea and any other admissions made during the plea-taking colloquy with the judge are admissible as evidence in the civil litigation." Aetna Cas. & Sur. Co. v. Niziolek, 395 Mass. 737, 750 (1985). Thus, the trial judge properly considered the wife's guilty pleas to crimes against the husband and their child.

For the first time on appeal, the wife next contends that the judge deprived her of the opportunity "to explain what occurred during the August 11 incident" that resulted in the

indictments and subsequent guilty pleas.  "An issue not raised or argued below may not be argued for the first time on appeal." Century Fire & Marine Ins. Corp. v. Bank of New England-Bristol County, N.A., 405 Mass. 420, 421 n.2 (1989).  This rule is particularly appropriate here because the wife asked the trial judge to exclude evidence underlying the guilty pleas.  In two pretrial motions, the wife asked the judge to exclude testimony related to the August 11 hatchet attack and any bad act evidence.  At the final pretrial hearing, the judge said, "[I]t's a bad idea to get into exactly what happened on August 11th and I don't, and I don't need it because the only, I think the only pertinent fact is the fact of the convictions, . . . which I don't think would be disputed anyway."  The judge then asked the wife's counsel "how deeply we should delve into what happened on August 11th."  Counsel responded that the convictions were "something that we wouldn't contest," and added, "I do think that permitting testimony about what someone said during the course of the incident, what they perceived to have meant by the other party, I think, does jeopardize the coherence of the trial and it threatens, I think, very, very seriously to take us off the rails."  At trial, the wife's counsel did not attempt to offer any evidence relative to the hatchet attack and successfully objected when the husband's

counsel tried to broach the subject. Based on this record, the wife's claim is waived.

5. Implied covenant of good faith and fair dealing. The wife contends that the judge erroneously applied the implied covenant of good faith and fair dealing to excuse the husband from his obligation to make the monthly property division payments required by the separation agreement and judgment. The implied covenant, a familiar concept in "commercial situations," is also "applicable in the context of a marital separation agreement." Larson v. Larson, 37 Mass. App. Ct. 106, 109-110 (1994). See Krapf v. Krapf, 439 Mass. 97, 106 (2003). That covenant demands that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." Druker v. Roland Wm. Jutras Assocs., Inc., 370 Mass. 383, 385 (1976), quoting Uproar Co. v. National Broadcasting Co., 81 F.2d 373, 377 (1st Cir.), cert. denied, 298 U.S. 670 (1936). Here, the judge concluded that, by trying to kill the husband with a hatchet, the wife committed a breach of the covenant of good faith and fair dealing implied in the separation agreement. The judge reasoned that this breach by the wife "excused" the husband's obligation to continue making the monthly payments for the division of the value of the dental practice. (No other provisions of the separation agreement are at issue.)

The wife argues that the judge's analysis is flawed because she did not properly consider that (1) an equitable division of property under G. L. c. 208, § 34, is not modifiable and therefore forecloses relitigation; (2) the separation agreement was not conditioned on postagreement conduct; (3) the wife did not commit a breach of the implied covenant of good faith and fair dealing; and (4) the husband failed to prove "demonstrable harm" caused by the wife.

We disagree with the proposition that equitable division of property under G. L. c. 208, § 34, forecloses all further litigation on the subject. Under § 34, the rights of parties to marital property are generally fixed by the terms of the divorce judgment and, unlike alimony, "not subject to modification" (citation omitted). Pfannenstiehl v. Pfannenstiehl, 475 Mass. 105, 114 n.19 (2016). Courts have, however, sometimes revisited property division where, as here, a party claims a violation of the implied covenant of good faith and fair dealing. See, e.g., Krapf, 439 Mass. at 100-102, 106-107, 110 (affirming declaratory judgment requiring husband to pay wife amount equivalent to what she would have received from husband's military pension under separation agreement but for husband's breach of implied covenant by unilaterally electing to receive disability pay in lieu of pension); Nile v. Nile, 432 Mass. 390, 398 (2000) (affirming judgment awarding two-thirds of deceased husband's

trust to children of his first marriage where separation agreement required husband to bequeath and devise two-thirds of probate estate to children but he later transferred bulk of estate into trust in violation of implied covenant).  We see nothing in § 34 that prohibits a court from entertaining the contract defense raised here -- particularly where the parties understood that their separation agreement would survive the divorce judgment as an independent contract.  On the unique facts of this case, and considering the egregious nature of the wife's conduct, the judge could conclude that this case constitutes one of those rare situations that warrants revisiting the issue of property division.

We also reject the wife's argument that the implied covenant of good faith and fair dealing does not apply because the separation agreement was not conditioned on postagreement conduct.  The wife contends that when the Probate and Family Court judge approved the agreement, the approval only contemplated statutory considerations for division of property including "the conduct of the parties during the marriage," G. L. c. 208, § 34, but not conduct after the marriage.  The implied covenant of good faith and fair dealing has no such temporal limitation.  Indeed, such a limitation would lead to absurd results where a judge could consider a wife's predivorce solicitation to murder her husband as a factor under § 34, as in

Wolcott v. Wolcott, 78 Mass. App. Ct. 539, 543-544 (2011), but could not consider the same postdivorce conduct as a defense to performance of the terms set forth in a separation agreement.

The parties here understood that the separation agreement would survive the divorce judgment as an independent contract. Such a contract carries significant obligations. "Parties to a separation agreement stand as fiduciaries to each other, and will be held to the highest standards of good faith and fair dealing in the performance of their contractual obligations." Krapf, 439 Mass. at 103. See Robert & Ardis James Found. v. Meyers, 474 Mass. 181, 188 (2016) ("every contract in Massachusetts is subject to an implied covenant of good faith and fair dealing"); Clark v. State St. Trust Co., 270 Mass. 140, 153 (1930) ("Every contract implies good faith and fair dealing between the parties to it"). Because separation agreements are construed "according to established contract principles," Krapf, 439 Mass. at 103, the implied covenant of good faith and fair dealing applies to the parties' postagreement conduct.

Whether the wife committed a breach of the implied covenant of good faith and fair dealing was a question for the factfinder, Chokel v. Genzyme Corp., 449 Mass. 272, 278 n.6 (2007), and we do not disturb the finding unless clearly erroneous, Imbrie v. Imbrie, 102 Mass. App. Ct. 557, 569 (2023). The evidence here showed, inter alia, the following:  the

parties divorced; the husband maintained sole legal and physical custody of their four children; the parties entered into a separation agreement, which included a structured division of property through the husband's monthly payments to the wife spread over five years; the separation agreement required the husband to maintain a life insurance policy to secure these payments in the event of his death; the separation agreement was intended to provide an "orderly process" for the distribution of marital property and to end the financial "stress" on the parties; and, during the period of performance under the separation agreement, the wife attacked the husband and the parties' nine year old son with a hatchet and accused the husband of ruining her "reunification plans" that were "in the works" for the children.  As this evidence showed, the separation agreement provided the husband with a structured and orderly process to spread his payments over five years while he continued to earn an income from his dental practice and care for his children, who remained in his sole legal and physical custody.  At trial, the wife acknowledged that she was "not really comfortable with" the separation agreement.  Based on the "totality of the circumstances," T.W. Nickerson, Inc., 456 Mass. at 570, a fact finder could conclude from this evidence that the wife tried to thwart the consequences of the separation agreement by killing the husband, accelerating the property

division through the life insurance policy, and obtaining custody of the children. A fact finder could also conclude that the wife tried to seriously injure the husband and impair his ability to fund the carefully structured monthly payments with income derived from the ongoing dental practice. In the judgment of the fact finder, such precipitous and violent conduct could be viewed as a breach of the implied covenant of good faith and fair dealing because the wife took some action that will "have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." Druker, 370 Mass. at 385, quoting Uproar Co., 81 F.2d at 377.

As a final argument, the wife contends that the husband failed to prove all the elements of a valid defense. She argues that the husband also had to prove that she "actually destroyed or injured" a right or caused "demonstrable harm" such as economic loss. Since he survived the attack, so the argument goes, the husband suffered no real harm and should pay up. We disagree. "[T]he purpose of the covenant is to guarantee that the parties remain faithful to the intended and agreed expectations of the parties in their performance." Uno Restaurants, Inc. v. Boston Kenmore Realty Corp., 441 Mass. 376, 385 (2004). "A breach [of the covenant] occurs when one party violates the reasonable expectations of the other." Chokel, 449 Mass. at 276. A material breach by one party "excuses" the

other party from further performance and entitles the other party to "recover contract damages." Ward v. American Mut. Liab. Ins. Co., 15 Mass. App. Ct. 98, 100-101 (1983). Here, in raising affirmative defenses, including the argument that the wife committed a breach of the covenant of good faith and fair dealing, the husband sought only to be excused from performance; he did not seek damages, and he did not have to prove damages when raising the implied covenant of good faith and fair dealing as a defense.

The focus of this defense is not on whether tangible harm has been done but on whether a party took some action that "will have the effect of destroying or injuring" the rights of the other party to the contract. Druker, 370 Mass. at 385, quoting Uproar Co., 81 F.2d at 377. Within months of striking the bargains in the separation agreement, the wife tried to kill the husband with a hatchet. The wife's violent armed attack, with an admitted intent to murder the husband, could be viewed as a desperate attempt to undo the separation agreement that was designed by the parties to be the final step at resolving outstanding issues in their divorce. The wife's extreme conduct, manifestly aimed at destroying or injuring the husband's rights that had been fixed by the separation agreement, may be viewed as precisely the type of behavior prohibited by the covenant of good faith and fair dealing

because the wife tried to "recapture opportunities forgone" (citation omitted).  Anthony's Pier Four, Inc. v. HBC Assocs., 411 Mass. 451, 473 (1991).  Keeping in mind that "spouses who enter into agreements with each other are held to standards higher than those we tolerate in the arm's-length transactions of the marketplace," Krapf, 439 Mass. at 103, the trial judge could conclude that a spouse who tries to kill another spouse in order to evade the consequences of a separation agreement does not live up to this standard.  We discern no error and limit our holding to the conclusion that the wife's violation of the implied covenant of good faith and fair dealing precludes her recovery on her breach of contract claim.  See Hawthorne's, Inc. v. Warrenton Realty, Inc., 414 Mass. 200, 211 (1993).

The wife contends that applying the covenant of good faith and fair dealing here will create a "flood of litigation concerning allegations of post-divorce misconduct aimed at invalidating property settlements."  She argues that misconduct ranging from a party "slapp[ing] the face of the other" to being "habitually late in returning children" would jeopardize property settlements.  We disagree for several reasons.  First, we are unaware of any flood of litigation since the Supreme Judicial Court expressly began applying the covenant of good faith and fair dealing to separation agreements almost a quarter century ago.  See, e.g., Nile, 432 Mass. at 398.  Second, the

unique and admitted homicidal conduct in the present case allowed, but did not compel, the fact finder to conclude that such extreme conduct was sufficiently connected to specific terms of the separation agreement so as to excuse performance. Third, we need not "speculate" on the potential future applications of the covenant of good faith and fair dealing because, "on the facts before us, a finding is warranted that a breach of the contract occurred" justifying the husband's nonperformance.  Fortune v. National Cash Register Co., 373 Mass. 96, 104 (1977).

Conclusion.  We have intentionally confined this decision to the narrow review of the judgment rendered by the Superior Court trial judge.  We do not reach potential issues that have not been raised with respect to past or possible future proceedings in the Probate and Family Court.  After reviewing the record, we discern no "clearly erroneous" factual finding of the trial judge.  T.W. Nickerson, Inc., 456 Mass. at 569.  We have also scrutinized, de novo, the trial judge's application of the law to the facts and perceive no error.  Id.

Judgment affirmed.