In re the Marriage of: Diana Lynn Berberich f/k/a Diane Lynn MATT-SON, petitioner, Respondent,

v.

Mark Steven MATTSON, Appellant.

A16-1535

Court of Appeals of Minnesota.

Filed October 2, 2017

Review Denied Dec. 27, 2017

Anoka County District Court, File No. 02-FA-14-2007

Jennifer R. Wellner, Wellner & Isaacson, PLLP, Circle Pines, Minnesota (for respondent).

Francis Herbert White III, Francis White Law, P.L.L.C., Woodbury, Minnesota (for appellant).

Margaret Erickson, Southern Minnesota Regional Legal Services, Worthington, Minnesota; and Michael D. Dittberner, Linder, Dittberner & Bryant, Ltd., Edina, Minnesota; and Mary Catherine Lauhead, Law Offices of Mary Catherine Lauhead, St. Paul, Minnesota; and Johanna Clyborne, Brekke, Clyborne & Ribich, L.L.C., Shakopee, Minnesota (for amicus curiae Family Law and Military and Veterans Affairs Sections of the Minnesota State Bar Association).

Anne M. Honsa, Honsa & Associates, P.A., Minneapolis, Minnesota; and David L. Olson, Edina, Minnesota (for amicus curiae The Minnesota Chapter of the American Academy of Matrimonial Lawyers).

Benjamin Lee Krause, Krause Law, PLLC, Woodbury, Minnesota; and Carson J. Tucker (pro hac vice), Law Offices of Carson J. Tucker, Ann Arbor, Michigan (for amicus curiae Operation Firing for Effect and Forgotten Warriors Project, Inc.).

Considered and decided by Jesson, Presiding Judge; Rodenberg, Judge; and Bratvold, Judge.

## OPINION

JESSON, Judge

Mark Mattson asserts that federal law renders unenforceable the district court's judgment directing him to pay Diana Berberich 40% of his military disability compensation. In light of the recent United States Supreme Court decision, *Howell v. Howell,* — U.S. —, 137 S.Ct. 1400, 197 L.Ed.2d 781 (2017), we agree. Federal law preempts state courts from dividing a veteran's military disability compensation as marital property, even where, as here, the parties agreed to the division. As a result, we reverse and remand for entry of judgment reflecting the unenforceability of Mattson's obligation to pay military disability compensation to Berberich. In addition, because further findings are required on the issue of attorney fees, and because the appropriateness of any conduct-based attorney fees should be reconsidered in light of this opinion, we remand for further reconsideration of and findings on attorney fees.

## FACTS

Appellant Mark Steven Mattson enlisted in the U.S. Navy in 1984 and, while serving, married respondent Diana Lynn Berberich in November 1992 in Virginia. Mattson retired from the military in 2004 and was granted a 70% disability rating for injuries suffered during active duty service.

Mattson and Berberich separated in June 2014, and the following October, she filed for divorce in Minnesota. The parties finalized their divorce in February 2015 via a stipulated decree approved by the district court. At that time, they had two adult children. Berberich had been a homemaker and care provider for the parties' children during the majority of the marriage. At the time of the divorce, Berberich was employed part-time. Mattson was receiving military retired pay as well as military disability compensation.[1]

1. We generally use the terms "retired pay" to refer to military pension payments and "dis-

Pursuant to the decree, the parties agreed that Berberich was in need of temporary and permanent spousal maintenance, but they agreed to reserve the issue of spousal maintenance based upon Berberich's receipt of a share of Mattson's disability compensation. Under the stipulated decree, Berberich was to receive 40% of Mattson's "gross monthly military retirement pay," as well as 40% of "the gross amount of" Mattson's military disability compensation. The decree also divided personal property, debts, various financial accounts, real property, and other assets.

Following the divorce, Mattson made only sporadic payments on his obligations under the decree, resulting in substantial arrearages. In January 2016, Berberich attempted to enforce the terms of the decree. She sought the military retired pay and disability compensation owed under the decree, as well as other relief. Mattson opposed most of Berberich's requests.

On July 25, 2016, the district court filed an order directing Mattson to immediately pay to Berberich the military retired pay and disability compensation due and owing pursuant to the decree. The district court also granted other relief, including attorney fees. Mattson appeals.[2]

## ISSUES

I.   Did the district court err by enforcing a stipulated decree divid-

ing as marital property Mattson's military disability compensation?

II.  Are Mattson's challenges concerning health care coverage and the release of Veterans Affairs (VA) information moot?

III. Did the district court properly award attorney fees?

## ANALYSIS

**I.   The district court erred by enforcing that portion of the parties' stipulated decree dividing, as property, Mattson's disability compensation.**

■ The primary issue before us is whether federal law preempts enforcement of the portion of the parties' decree that divides Mattson's disability compensation.

Historically, two important policy goals have dictated how military retirement benefits are divided in dissolution proceedings. Congress sought to protect veterans' benefits to ensure that they reach veterans, with the goal of incentivizing participation in the military and maintaining a strong national defense. *See McCarty v. McCarty*, 453 U.S. 210, 234, 101 S.Ct. 2728, 2742, 69 L.Ed.2d 589 (1981) (discussing federal interests in the area of military retired pay), *superseded by statute*, Uniformed Services

ability compensation" to refer to payments made by the Department of Veterans Affairs for a service connected disability. *See* 10 U.S.C. § 1408(a)(4)(B) (2012) (discussing how to calculate total monthly retired pay); 38 U.S.C. § 101(13) (2012) (defining the term "compensation").

**2.** Two days prior to oral arguments before this court, the United States Supreme Court filed *Howell*, 137 S.Ct. 1400. Given the release of *Howell*, we concluded that supplemental briefing from the parties, as well as briefing from amici curiae, could be helpful in resolving this appeal. This court directed the

parties to brief *Howell* 's impact, and we invited amici curiae to participate. We received an amicus brief from the Family Law and Military and Veterans Affairs Sections of the Minnesota State Bar Association and the Minnesota Chapter of the American Academy of Matrimonial Lawyers (hereinafter collectively referred to as MSBA) concluding that the district court was not permitted to enforce the disability-compensation portion of the decree, if it amounted to a property division. We also received an amicus brief from Operation Firing for Effect and Forgotten Warriors Project, Inc. reaching a similar conclusion.

Former Spouses' Protection Act, 10 U.S.C. § 1408 (1982), *as recognized in Barker v. Kansas*, 503 U.S. 594, 603, 112 S.Ct. 1619, 1625, 118 L.Ed.2d 243 (1992). Yet Congress also protected spouses of veterans by ensuring that they are compensated in divorce. *See Mansell v. Mansell*, 490 U.S. 581, 587-89, 109 S.Ct. 2023, 2028-29, 104 L.Ed.2d 675 (1989) (discussing Congress's intent to carve out a portion of veterans' retired pay for spouses). The federal statute straddling these divergent goals is the Uniformed Services Former Spouses' Protection Act, referred to hereafter as the Act.

▮ Although state law historically controls domestic relations, *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 581, 99 S.Ct. 802, 808, 59 L.Ed.2d 1 (1979), the Act represents "one of those rare instances where Congress has directly and specifically legislated in the area of domestic relations." *Mansell*, 490 U.S. at 587, 109 S.Ct. at 2028. Thus, the Act raises the question of preemption. The preemption doctrine is rooted in the Supremacy Clause, which states that the laws of the United States "shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby." U.S. Const. art. VI, cl. 2. Congressional intent is the ultimate touchstone when determining if state action is preempted by federal law. *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 96, 112 S.Ct. 2374, 2381, 120 L.Ed.2d 73 (1992).

▮ We review de novo whether a federal statute preempts state law. *In re Estate of Barg*, 752 N.W.2d 52, 63 (Minn. 2008). We begin by examining military retirement benefits and how preemption works to protect those benefits in divorce,

and we then discuss the Act, which allows some retirement benefits to be treated as marital property. Next we turn to the caselaw—including our decision in *Gatfield*, 682 N.W.2d 632—interpreting the Act. Finally, we apply the law as most recently interpreted by the Supreme Court in *Howell*, 137 S.Ct. 1400, to the stipulated judgment dissolving the marriage of Mattson and Berberich.

### *Military benefits available to veterans and the Uniformed Services Former Spouses' Protection Act*

Military personnel who serve for a set number of years may retire with pay. *See, e.g.*, 10 U.S.C. §§ 6321-23 (2012) (Navy and Marine Corps officers). The amount of retired pay is determined by the number of years served and the rank at which the member retires. *See* 10 U.S.C. §§ 6325-27 (2012) (Navy and Marine Corps). Additionally, disability compensation is available to veterans who became disabled as a result of their military service. *See* 38 U.S.C. § 1110 (2012) (basic entitlement for injury during wartime). Generally, if a veteran is to receive disability compensation, to avoid double-dipping, he or she must waive a corresponding amount of retired pay. *See* 38 U.S.C. § 5305 (2012).

Congress passed the Act after the Supreme Court held that the federal laws then governing military retired pay preempted state courts from treating military retired pay as community property. *McCarty*, 453 U.S. at 210, 101 S.Ct. at 2730; *see also Mansell*, 490 U.S. at 581, 109 S.Ct. at 2024 (stating that the Act was a "direct response" to *McCarty*).[3] In the Act, Congress effectively balanced the mil-

---

**3.** The Court in *McCarty* reasoned that "Congress has determined that a youthful military is essential to the national defense; it is not for [s]tates to interfere with that goal by less- ening the incentive to retire created by the military retirement system." 453 U.S. at 235, 101 S.Ct. at 2742.

itary objective of maintaining a national defense with the goal of fairly compensating military spouses in divorce. *See Mansell*, 490 U.S. at 594, 109 S.Ct. at 2031 (noting congressional intent to both "create new benefits for former spouses and to place limits on state courts designed to protect military retirees").

To achieve this balance, the Act carves out a portion of a veteran's retired pay that may be treated as marital property and is divisible between spouses in a dissolution. It specifically provides that state courts "may treat disposable retired pay" as marital property. 10 U.S.C. § 1408(c)(1) (2012). The term *"disposable retired pay"* includes gross retired pay minus certain deductions. *See* 10 U.S.C. § 1408(a)(4)(A) (Supp. 2017) (emphasis added).[4]

But the Act does not specifically allow for the treatment of *disability compensation* as marital property. 10 U.S.C. § 1408(a)(4)(A). Moreover, it specifically excludes from marital property those amounts of retired pay that are waived in favor of disability compensation. 10 U.S.C. § 1408(a)(4)(A)(ii). As a result, when a disabled military retiree waives part of his or her retired pay in favor of disability compensation, a former spouse "is effectively deprived of a portion of distributable marital property that he or she otherwise would have received as a marital interest in retired pay if that portion had not been waived for disability benefits." Michael T. Flannery, *Military Disability Election and the Distribution of Marital Property Upon Divorce*, 56 Cath. U.L. Rev. 297, 302 (2007).

## Caselaw interpreting the Act's impact on disability compensation in dissolutions

Seven years after the passage of the Act, the Supreme Court in *Mansell* interpreted the Act in a case involving a dissolution decree that effectively divided a veteran's disability compensation as part of a property settlement. 490 U.S. at 585-87, 109 S.Ct. at 2027-28. The veteran sought modification of the decree, arguing that the Act protected his receipt of disability compensation, but the California courts refused to modify the decree, concluding that the Act did not preempt state community property law. *Id.* The Supreme Court reversed. *Id.* It held that the Act preempted state law, concluding that the Act "does not grant state courts the power to treat as property divisible upon divorce military retirement pay that has been waived to receive veterans' disability benefits." *Id.* at 594-95, 109 S.Ct. at 2032. Under the Act, the Court noted, states' authority to award military retired pay as marital property "is both precise and limited." *Id.* at 588-89, 109 S.Ct. at 2028-29.

After *Mansell*, state courts reached different conclusions regarding the scope of this limited authority as regards to disability compensation. States particularly differed on the treatment of that compensation when a veteran's retired pay was divided on dissolution, and a veteran's spouse was thereby entitled to a certain share of retired pay, but the veteran later waived retired pay in favor of disability compensation, thereby depriving the vet-

---

4. The Act also imposes a 50% limit on the disposable retired pay that can be paid to a former spouse as a property award. 10 U.S.C. § 1408(e)(1) (2012). This limitation has been interpreted in various ways. *See Deliduka v. Deliduka*, 347 N.W.2d 52, 55 (Minn. App. 1984) (stating that "a state court wishing to award a former spouse more than 50 percent of disposable retired pay must order direct government payments *and* payments by the member of the military to the spouse") (emphasis in original), *review denied* (Minn. Jul. 26, 1984); *see also In re Marriage of Bowman*, 972 S.W.2d 635, 639 (Mo. Ct. App. 1998) (concluding that 50% is an absolute cap).

eran's spouse of the awarded retired-pay assets. Some courts concluded that veterans could not directly assign disability compensation to a spouse, but a spouse could receive "indemnification," or compensation for reductions in his or her property award caused by the veteran's post-decree waiver of retired pay in favor of disability compensation. *See, e.g., Abernethy v. Fishkin*, 699 So.2d 235, 236-37 (Fla. 1997), *effectively overruled by Howell*, 137 S.Ct. 1400; *In re Marriage of Strassner*, 895 S.W.2d 614, 617-18 (Mo. Ct. App. 1995). Other courts disagreed, concluding that such indemnification or equitable compensation was not permitted. *See, e.g., Mallard v. Burkart*, 95 So.3d 1264, 1266 (Miss. 2012). Some courts determined veterans who entered into settlement agreements were contractually obligated to not waive retired pay in favor of disability compensation. *See, e.g., Krapf v. Krapf*, 439 Mass. 97, 786 N.E.2d 318, 326 (Mass. 2003), *effectively overruled by Howell*, 137 S.Ct. 1400. And still others concluded that states simply did not have jurisdiction over military disability compensation. *See, e.g., Ryan v. Ryan*, 257 Neb. 682, 600 N.W.2d 739, 745 (1999).[5]

In *Gatfield*, this court addressed the issue in a case in which a veteran agreed to pay 50% of his total monthly disposable military retired pay to his former spouse, agreed to not draw disability compensation in lieu of retired pay, and further agreed that if he did draw disability compensation, he would pay 50% of the disability compensation to his former spouse. 682 N.W.2d at 634-35. The veteran subsequently "opted to receive military disability [compensation] and waived an equivalent portion of his military retire[d] pay." *Id.* at 635. The former spouse moved the district court to order the veteran to follow the terms of the stipulation and compensate her for the reduced amount of retired pay. *Id.* The district court denied the former spouse's requests. *Id.* On appeal, relying on contract law and the prohibition against collateral attacks upon judgments, we held that "federal law does not preempt state district courts from enforcing the stipulated terms/provisions" of a divorce decree. *Id.* at 637.[6] We further noted that "[i]t is well settled that in a stipulation, parties are free to bind themselves to obligations that a court could not impose." *Id.*

Given the differing state interpretations that followed *Mansell*, the Supreme Court

---

5.  While courts differed post-*Mansell* on treatment of disability compensation as part of property settlements, they relied on disability compensation to calculate and enforce child support and spousal maintenance obligations. *See Sward v. Sward*, 410 N.W.2d 442, 445 (Minn. App. 1987) (stating that military disability "benefits" may be considered as income in setting both child support and maintenance awards), *review granted* (Minn. Sept. 30, 1987) *and appeal dismissed* (Minn. Dec. 2, 1987). In *Rose v. Rose*, 481 U.S. 619, 619, 622, 107 S.Ct. 2029, 2030, 2032, 95 L.Ed.2d 599 (1987), the Supreme Court addressed whether a state court could hold a disabled veteran in contempt for failing to pay child support when disability benefits were his principal source of income, and his support obligation was set using that income. The Court held that "disability benefits" were never intended to be exclusively for the veteran, but were intended to support "the veteran's family as well." *Rose*, 481 U.S. at 634, 107 S.Ct. at 2038; *see* 10 U.S.C. § 1408(e)(6) (stating that the Act does not relieve a veteran "of liability for the payment of alimony, child support, or other payments required by a court order on the grounds that payments made out of disposable retired pay ... have been made in the maximum amount permitted").

6.  More specifically, we stated "the Supreme Court's decision in *Mansell* does not prevent state courts from enforcing the stipulated provisions of a dissolution judgment that husband will not waive his retirement pay in favor of military disability pay, and if he does, he will pay wife 50% of the total military pay he receives." *Id.*

readdressed the preemptive effect of the Act in *Howell*. 137 S.Ct. at 1404. *Howell* involved a decree that awarded 50% of a veteran's future military retired pay to his former spouse. *Id.* Years after the decree, the veteran waived a portion of his retired pay in favor of disability compensation, thereby reducing the former spouse's award. *Id.* The former spouse sought to enforce the decree in order to restore the amount of her share of the veteran's retired pay. *Id.* The Arizona family court concluded that the original decree had granted the former spouse a "vested" interest in the prewaiver amount of the veteran's retired pay, and the Arizona Supreme Court affirmed, holding that "federal law did not preempt the family court's reimbursement order." *Id.*

The United States Supreme Court reversed. The Court held that "[a] state court may not order a veteran to indemnify a divorced spouse for the loss in the divorced spouse's portion of the veteran's retirement pay caused by the veteran's waiver of retirement pay to receive service-related disability benefits." *Howell*, 137 S.Ct. at 1401. The Court rejected the argument that the former spouse's right to the veteran's benefits had vested, noting that state courts "cannot 'vest' that which they lack the authority to give." *Id.* The Court was also unpersuaded by the various equitable compensation schemes designed to indemnify or reimburse an ex-spouse for

reductions in his or her awarded assets caused by a veteran's waiver of retired pay in favor of disability compensation. The Court concluded that "[r]egardless of their form, such orders displace the federal rule and stand as an obstacle to the accomplishment and execution of the purposes and objectives of Congress." *Id.* at 1402.

### The stipulated judgment between Berberich and Mattson

■ In this case the district court, relying on *Gatfield*, determined that Mattson's obligation to pay a portion of his disability compensation to Berberich was enforceable.[7] Mattson asserts that federal law preempts such a division.[8] We agree that the division of Mattson's disability compensation was not permitted by federal law.

■ Federal law preempts state law with respect to the division of military retired pay at dissolution. *Mansell*, 490 U.S. at 581, 109 S.Ct. at 2025; *McCarty*, 453 U.S. at 232-35, 101 S.Ct. at 2741-43. The Act carves out a specific portion of a veteran's retired pay that may be treated as marital property. *See* 10 U.S.C. § 1408 (2012). This amounts to a limited grant of authority to states. *Mansell*, 490 U.S. at 588-89, 109 S.Ct. at 2028-29. But the Act does not allow for the treatment of disability compensation as marital property, and it specifically excludes from marital property those amounts of retired pay that are waived in favor of disability compensation.

---

7. We conclude that the disability provision in the parties' decree was unambiguously a property division. The parties' decree specifically reserved the issue of spousal maintenance. It would be contradictory to both award and reserve maintenance.

8. Mattson also contends that 38 U.S.C. § 5301 (2012), which protects "benefits due or to become due under any law administered by the Secretary [of Veterans Affairs]" from assignment unless "specifically authorized by law," prevented any valid assignment of his

disability compensation from occurring. Because federal preemption under the Act prohibits any division of Mattson's disability compensation and renders any such division unenforceable, we need not determine whether 38 U.S.C. § 5301 prevented assignment of those benefits. *See Mansell*, 490 U.S. at 587 n.6, 109 S.Ct. at 2027 n.6 (declining to address whether anti-attachment clause protected veteran's receipt of disability compensation because the Act precluded treating those benefits as marital property).

10 U.S.C. § 1408(a)(4)(A). We therefore conclude that disability compensation is not among the military benefits that may be divided as marital property, and states are preempted from enforcing such divisions. As the Court stated in *Howell*: "The basic reasons *McCarty* gave for believing that Congress intended to exempt military retirement pay from state community property laws apply *a fortiori* to disability pay." 137 S.Ct. at 1406.

■ In light of *Howell*, we conclude that our holding in *Gatfield* has been functionally overruled. In *Gatfield*, we held that principles of contract and res judicata could render a stipulated decree indemnifying an ex-spouse enforceable, even if it ran afoul of *Mansell*, because "parties are free to bind themselves to obligations that a court could not impose." 682 N.W.2d at 637. But, as clarified in *Howell*, such equitable compensation degrees do not escape federal preemption and are simply unenforceable. 137 S.Ct. at 1401-02.[9]

■ Berberich maintains that Mattson is contractually bound by the terms of their stipulated agreement to pay his agreed-upon portion of the property division, and she argues that Mattson has not challenged the decree, which remains a valid judgment. But this argument runs headlong into *Howell*, which makes clear that state courts "cannot 'vest' that which (under governing federal law) they lack the authority to give." 137 S.Ct. at 1406. Moreover, *Howell* effectively overruled cases relying on the sanctity of contract to escape federal preemption. *See id.* at 1404-05 (listing *Krapf*, 786 N.E.2d at 318, as among the state court cases that failed to properly interpret *Mansell*). Simply put, state laws are preempted in this specific area.

■ Berberich also argues that she should be entitled to the apportioned *amount* of disability compensation and that, once the disability-compensation funds reach Mattson's pocket, they have become his property and are no longer subject to federal protection. Again, as recognized in *Howell*, state courts may not simply circumvent federal preemption by relying on arguments rooted in semantics. 137 S.Ct. at 1406. To recognize the legitimacy of such an argument would eviscerate federal preemption.

■ Federal preemption in this area may create a difficult situation for divorcing couples, but this does not permit an appellate court to address possible inequities on a case-by-case basis. District courts, when they determine the value of marital assets, remain free to account for the possibility that some military retired pay might later be waived in favor of disability compensation. And district courts may account for reductions in the value of these assets when calculating or recalculating the need for spousal support. *Howell*, 137 S.Ct. at 1406. We encourage district courts to keep these avenues in mind as they navigate the changing landscape involving military disability compensation.[10]

---

9. Despite concluding that some portions of *Gatfield* must be overruled, we do not seek to dissuade the use of settlement agreements as a means for resolving dissolution proceedings, and such agreements are still "accorded the sanctity of [a] binding contract," unless preempted by federal law, as is the case here. *See Shirk v. Shirk*, 561 N.W.2d 519, 521 (Minn. 1997).

10. Here, the parties specifically reserved the issue of spousal maintenance so long as Berberich was receiving her share of Mattson's disability compensation. Mattson and amicus curiae MSBA urge this court to provide guidance on the retroactivity of any subsequent spousal-maintenance award. MSBA further asserts that Mattson's disability compensation constitutes income and requests

Because federal law precludes state courts from dividing military disability compensation as marital property, we conclude that the portion of the judgment dividing Mattson's disability compensation is unenforceable. Accordingly, we reverse and remand for entry of judgment consistent with this opinion.

## II. Mattson's challenges concerning health care coverage and VA-related information are moot.

Mattson next argues that the district court erred by requiring him to ensure Berberich's health care coverage and by granting Berberich access to VA-related information. Berberich counters by asserting that any relief granted was contingent, and there is no live controversy for this court to address. We conclude that these issues are moot.

Berberich moved the district court to direct Mattson to assist her in maintaining health care coverage through United Health/Tricare from February 2015 to February 2016. The parties' decree required that Mattson "cooperate and assist" Berberich in maintaining insurance through United Health Care, with each party obligated to pay his or her own insurance costs. The district court granted Berberich's motion and ordered Mattson to restore coverage for Berberich, *if* she remained eligible for coverage. Berberich also sought an order from the district court requiring Mattson to sign authorizations directed to the Department of Defense Finance and Accounting Service and the VA so that she has ongoing access to information about Mattson's receipt of military retired pay and disability compensation. The district court granted Berberich's requested relief, to the extent possible,

and directed Mattson to sign the releases, but noted that it was unclear whether the releases would be honored.

We conclude that both issues are moot. *See Chaney v. Minneapolis Cmty. Dev. Agency*, 641 N.W.2d 328, 331-32 (Minn. App. 2002) (discussing the mootness doctrine), *review denied* (Minn. May 28, 2002). When an event occurs which makes a decision on the merits unnecessary, an appeal is moot. *In re Inspection of Minn. Auto Specialties, Inc.*, 346 N.W.2d 657, 658 (Minn. 1984). Here, a decision on the merits is unnecessary because Berberich's motion concerning health care coverage was limited to coverage from February 2015 to February 2016, so the period for which she requested assistance in obtaining coverage has already passed. Moreover, the district court's order was not absolute; it was contingent on Berberich's eligibility. As to the VA-related information, we have already determined that the judgment's division of Mattson's disability compensation is unenforceable. Therefore, Berberich has no need to access Mattson's VA records concerning disability compensation. *See Auto Specialties*, 346 N.W.2d at 658. Further, the district court did not actually grant access to the information held by the VA, but merely ordered Mattson to sign releases, noting that it was unclear whether the authorizations would be honored. Even if we accepted that these issues represent live controversies, we would not conclude that the district court clearly abused its discretion in either instance, given the contingent nature of the relief granted. *See Potter v. Potter*, 471 N.W.2d 113, 114 (Minn. App. 1991) (stating that a district court "may issue appropriate orders implementing or

that this court direct a new maintenance analysis using this income. However, a spousal-maintenance determination has not been

made by the district court, and appellate review would be premature.

enforcing the provisions of a dissolution decree").

### III. It is unclear if the district court properly awarded attorney fees; additional findings and reconsideration are necessary.

■ Finally, Mattson argues that the district court abused its discretion by awarding conduct-based attorney fees. Mattson contends that the division of his disability compensation in the dissolution decree was improper, and therefore his efforts to litigate that issue were warranted.

In seeking enforcement of the judgment, Berberich sought attorney fees, attesting that she was unable to pay her legal fees, and asking that Mattson be required to pay because of his failure to comply with the judgment. The district court ultimately awarded Berberich $2,500 in attorney fees and costs, relying on Minn. Stat. § 518.14, subd. 1 (2016) as a basis for the award.

■ Section 518.14 allows for both need-based and conduct-based fee awards, but the standards for making each type of award differ. *Geske v. Marcolina*, 624 N.W.2d 813, 816 (Minn. App. 2001). Here, the district court failed to identify whether it was awarding need-based fees, conduct-based fees, or both. *See id.* (stating that fee awards made under section 518.14 "must indicate to what extent the award was based on need or conduct or both"). We must therefore remand for additional findings on the nature of the attorney fees awarded. Further, one of the touchstones for awarding conduct-based fees is determining whether the party's conduct "*unreasonably* contribute[d] to the length or expense of the proceeding." *See* Minn. Stat. § 518.14, subd. 1 (emphasis added). To the extent that the attorney fees awarded were conduct-based, and specifically addressed Mattson's refusal to pay his disability compensation to Berberich, we remand for reconsideration of such an award.[11]

### DECISION

Because the district court's division of Mattson's disability compensation is unenforceable, we reverse and remand for entry of judgment reflecting the unenforceability of Mattson's obligation to pay military disability compensation to Berberich. And because further findings are required to determine the type of attorney-fee award, and the reasonableness of any conduct-based attorney-fee award should be reconsidered in light of this opinion, we reverse and remand for further findings and reconsideration consistent with this opinion.

**Reversed and remanded.**

---

11. We note that Mattson also refused to honor his retirement-pay obligation to Berberich, an obligation that he does not challenge.